FREDERICK LANGE, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 8, 1906.

1. **RAILROADS: Flying Switch: Brakeman's Duty: Jury Question.** When a car is shunted by a flying switch onto a side track, the brakeman in charge should have his car under control, and whether he uses proper effort to stop the car to avoid running over a child coming upon the track, is a question for the jury whose finding is conclusive—especially where the evidence is conflicting.

2. ———: **Negligence: Blowing Off Steam.** It is negligence for an engineer to blow off steam to frighten children standing upon the station platform.

3. ———: ———: **Flying Switch: Children.** It is negligence for a railroad to make a flying switch at a station when it knows children are upon the station platform, and this whether the children are trespassers or not.

4. ———: ———: ———: **Demurrer to the Evidence.** In view of the evidence it is held that peremptory instructions for the defendant were rightfully refused.

5. ———: ———: **Instructions: Practice.** Though an instruction be seriously defective, if there is no objection pointing out such defect in the appellant's brief and argument, the defect is waived.

6. ———: ———: ———: **Blowing off Steam: Instructions.** Certain instructions with their modifications by the court are considered and the modifications sustained with the suggestion that they might properly have been further modified in the interest of the plaintiff.

7. ———: ———: ———: ———: ———: **Notice.** Instructions relating to the effect of notice to a child in danger of being run down by a car set in motion by a flying switch is considered and approved as modified and given by the court.

8. ———: ———: ———: **Definition.** Where it is admitted that the switch is a flying one, no definition of a flying switch is necessary.

9. **DAMAGES: Child's Injury: Father's Recovery: Excessive Verdict.** A verdict in favor of a father for nursing and loss of care of his infant daughter is considered and held not excessive.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*Martin L. Clardy* and *John Cashman* for appellant.

(1) The court erred in refusing defendant's demurrer to plaintiff's evidence, and again in refusing a demurrer to all the evidence, under the circumstances, it was not negligence to make the switch as it was made.

Coleman v. Land and Lumber Co., 105 Mo. App. 1. c. 271; Tanner v. Railway, 161 Mo. 497; Zumault v. Railroad, 175 Mo. 311; Carrier v. Railway, 175 Mo. 481; Holwerson v. Railway, 157 Mo. 216; Lee v. Jones, 181 Mo. 299; Puechell v. Wire & Iron Co., 79 Mo. App. 459. (2) Where the act of a child is the sole cause of the injury, there can be no recovery. All the cases in this State are to this effect. Barney v. Railway, 126 Mo. 372, 389; Puechell v. Wire & Iron Co., 79 Mo. App. 459; Coleman v. Land and Lumber Co., 105 Mo. App. 271; Lee v. Jones, 181 Mo. 291, 299; McCarty v. Railway, 92 Mo. 536; Boland v. Railroad, 36 Mo. 484; Straub v. Soderer, 53 Mo. 38; Moore v. Wabash Railway, 84 Mo. 1. c. 488. (3) Instructions three and four given on behalf of plaintiff were a comment on the evidence and singled out and gave undue force, weight and influence to that part of the evidence touching the age and discretion of plaintiff's daughter. All the jury were required to find to authorize a verdict for plaintiff was that she was of "tender years." The instructions were practically peremptory in this direction to the jury and constitute reversible error. Noyes et al. v. Cunningham, 51 Mo. App. 197; Meyers v. Realty Co., 96 Mo. App. 629; Lynch v. Railway, 112 Mo. 437; State v. Snyder, 182 Mo. 521; Jones v. Jones, 57 Mo. 138; Chaney v. Ins. Co., 62 Mo. App. 49; Bindbeutal v. Railway, 43 Mo. App. 470, and cases there collated and quoted from; Thummel v. Dukes, 82 Mo. App. 53; Baker v. Railroad, 122 Mo. Mo. 1. c. 549. (4) The court erred in refusing defendant's instructions one, two and three as offered and in giving same as amended by the court. These instructions declared correct principles of law as offered and are incorrect as given. They disregard every duty which the law imposed on plaintiff's daughter to exercise reasonable precautions for her own safety. Baker v. Railroad, 122 Mo. 549 and 595, and cases there collated and quoted. (5) There is an irreconcilable conflict between the plaintiff's and defendant's instruc-

tions.  The plaintiff's instructions are in conflict with each other.  The tendency of the instructions taken severally or as a whole was to blind and mislead the jury instead of guiding them.  Bindbeutal v. Railway, 43 Mo. App. 463 and cases cited; Baker v. Railroad, 122 Mo. 549 and 595 and cases cited.  (6)  The verdict is manifestly the result of passion and prejudice.  So overcome were the jury by these influences, that they forced the plaintiff to admit they had gone too far and he was compelled to enter a remittitur.  Such a verdict should not be permitted to stand.  Schmitz v. Railway, 46 Mo. App. l. c. 396.

*Charles Lyons* and *Alexander Graves* for respondent.

Filed argument.

BROADDUS, P. J.—The plaintiff sues for damages, the alleged result of the negligence of the defendant company for injury inflicted upon his minor daughter, Freda Lange.  The place of injury was at Emma, a station on defendant's railroad near the boundary line between Lafayette and Saline counties.  There is no depot building at said station, but there is a platform made of cinders for the use of passengers arriving and departing on defendant's train.  The railroad runs east and west.  A public road crosses defendant's tracks a short distance east of the said platform. The distance between the main and switch tracks is about twenty-six feet.

It was shown that Freda, a little girl nine years old, on her way home from school in company with fifteen or twenty other school children stopped at the station to witness the departure of their teacher west on a passenger train then about due.  When the passenger train arrived, the freight engine with cars was standing on the east end of the switch track.  After the passenger train

had left, the engine of the freight train came upon the main track and stopped at the platform, after having previously switched an empty freight car upon the side track, which car was moving west upon almost a level grade at the rate of from three to five miles an hour with a brakeman on top standing at the brake. The plaintiff's daughter at this time, with other children, was on the platform and between the main track and side track, and near the engine. The engineer blew off steam, which alarmed the girl, who with two other little girls stepped off onto the side track a short distance ahead of the moving car and she was run over by it. She was severely injured, and it became necessary in order to save her life to amputate one of her legs. The other two children, that were on the side track at the time, were ahead of plaintiff's daughter and escaped without injury.

The brakeman on the car had his face turned west and plaintiff's evidence tended to show that he could not avoid seeing the children on the track ahead of his car and their perilous situation in time to have avoided striking Freda unless he had closed his eyes. The car was moving slowly and the evidence fully justifies the belief that at its rate of speed, under proper control, it could have been stopped in time to have avoided the injury by the exercise of the necessary diligence.

The car in question was shunted on the side track by what is known as the flying switch method, which was shown to have been against the rules of the defendant company, because it was dangerous. [Baker v. Railway, 147 Mo. 158.] Three persons, testifying as experts, stated that a car going at four or five miles an hour could have been stopped in four or five feet, and going at the rate of three miles an hour almost instantly. This evidence is characterized by defendant as absurd and unworthy of belief. And the argument is illustrated in the following language, viz.: "With a brakeman standing at his post on top of the car and seeing the girl step on the track before he could catch the brake, he could

only turn it one-half round at the farthest without changing his hold with both hands. With a brake-shaft two inches in diameter, with which to gather the chain attached to the brake, it would take at least two rounds of the shaft or four movements and changes of the hands before the brakes would be set." It is urged that it is not in the power of man to go through all this while the car is moving four feet when it is going four miles an hour. The argument is based upon false premises. It was the duty of the brakeman on the car projected by the flying switch method to have had his brake under control, especially in view of the fact that it was to be connected with a car ahead, as shown by the evidence. Under such circumstances, at the rate of speed shown and moving upon a level grade, we are not prepared to say that, as a physical fact, the stopping of the car within the time mentioned was impossible. It appears to us that with the brakes under proper control and applied in an emergency on a single empty car going at the rate of speed and on the grade in question ought to have stopped it in a few feet. At least, it was a question for the jury and not a question of law arising on conceded facts. However that may be, there was evidence to the effect that the distance from the car to the point where the girl got upon the track was from six to eight feet. Some of the witnesses testified that the brakeman made no effort to stop the car, others that he did but was unable to do so in time to have averted the danger, but it was for the jury to say what the truth of the matter was, and as they found against defendant, it, as well as this court, is precluded from going behind such finding.

There was evidence tending to show that the engineer was blowing off steam to frighten the children and that he was enjoying their discomfiture. If that was true, it was culpable negligence upon the part of the engineer, for there is no question but what blowing off steam frightened the girl and caused her to step upon the side track, where she was injured.

There is no doubt but what the defendant's agents operating the freight train knew that there was a number of children around and between the tracks at the time the flying switch was made by the empty car, under which circumstances it was negligence to make the flying switch. [Baker v. Railroad, 147 Mo. l. c. 156.] In that case, the court quotes with approval what is said in Railroad v. Hammer, 72 Ill. 350, that "All know that a flying switch passing on a track without an engine attached, or a bell ringing, or a whistle sounding, is and must from the very nature of things be more perilous to life than a switch made with an engine attached with usual signals." And it can make no difference even if the children were trespassers, as defendant's trainmen knew of their presence and their position between the tracks. They were not justified in making the flying switch, because of the obvious danger under the circumstances. And it is plain that plaintiff's daughter would not have been run over, had the usual method been adopted in switching the car.

A more detailed statement of the case in reference to the facts just prior to and at the instant of the injury shows that the engine, after it had stopped at the platform, was throwing out great quantities of steam, which reached among the children, creating confusion among them, and in order to evade it two of them and plaintiff's daughter unwittingly stepped onto the switch track ahead of the moving car, which had no means of warning them of the danger, except that given by the cries of the bystanders and the brakeman in charge of the car. And there is evidence that the engineer knew that he was causing confusion and alarm among the children present. According to his statement, he could have controlled this escaping steam at the time, and that none escaped. But his evidence as to the latter statement was contradicted by several witnesses, as already shown. Under the state of the proof, if believed, and that was for the jury, the girl was not guilty of con-

tributory negligence and the engineer failed to exercise common prudence. At the close of plaintiff's evidence and also at the close of all the evidence, defendant asked an instruction for a verdict in its behalf, which the court refused. From what has been said, these instructions were rightfully refused.

The court submitted two instructions to the jury in relation to the negligence of the girl in stepping upon the side track in front of a moving car, to the effect that, if the jury found that, by reason of her youth and inexperience, "she was not aware of the danger to which she was exposed in doing so; then the jury will take this into consideration in passing upon her alleged negligence." The instructions were proper. The evidence tended to show that she was timid, inexperienced, and unaware of the danger of her surroundings, and that she was confused and alarmed by the acts of defendant's engineer in blowing off steam. It was therefore a question for the jury to determine whether she was guilty of contributory negligence. A similar instruction, under like conditions, was approved by the court in banc in Schmitz v. Railway, 119 Mo. 256. Our attention has been called to the case of Lynch v. Railway, 112 Mo. 420, where it is alleged that a similar instruction was condemned. But the instruction in that case was held to be faulty because it assumed that the boy ten or twelve years of age was of imperfect discretion. Here, however, the jury is required to find that the girl was deficient in discretion. In any view of the matter, we are to be governed by the later decision.

But notwithstanding the question of the daughter's negligence was thus submitted to the jury, the court by instruction No. 2 practically told the jury that she was guilty of contributory negligence and that plaintiff was entitled to recover if *it found that the brakeman saw her on the track in time to have averted the danger.* While this instruction is seriously defective, it has escaped the criticism of the defendant in its argument and

brief in this court. Such being the fact, the defect is waived. The objection of the defendant is that they are in conflict. However, we do not think that they are. In the first place, if the defendant was negligent and the daughter not negligent, the plaintiff would be entitled to recover. If she was negligent, but her injury could have been avoided by the defendant by the exercise of ordinary care after the perilous condition on the track had been discovered by the brakeman, the defendant was liable. Plaintiff, under the evidence, was entitled to recover under either theory of the instructions.

Defendant complains of the action of the court in refusing to give the following instructions: "The court instructs the jury that there is no evidence that Freda Lange was at the platform of defendant at Emma station on the occasion of being injured except merely as a matter of pleasure, amusement or curiosity, and that when the passenger train pulled out, it was her duty to leave and the defendant was under no obligation to her after she remained there except it was bound to use reasonable care not to injure her after any of its agents or employees saw her in a position of danger, and that in no event was she permitted to step upon the tracks of the defendant and in doing so did so at her own risk and peril subject merely to this exercise of reasonable care of the said employees not to injure her after seeing her in a place of peril." The court added the following and then gave it to the jury: "Unless you believe from the evidence that said Freda Lange was frightened by the discharge of steam from defendant's engine and that her attention was on account so diverted as to cause her not to notice the car approaching her on said track." The instruction as asked is upon the theory of what is known as the "last-chance doctrine," leaving out altogether the question of defendant's negligence in using the flying switch, as referred to, and the act of defendant's engineer in letting off steam, causing her alarm and confusion. The only error the court made was in not

further qualifying said instruction. A similar qualification was also made to defendant's third instruction.

There was evidence that persons present, who saw the girl's peril, cried out, warning her of her danger, but the evidence indicated that she either did not hear or understand such warning. In said instruction No. 3, as well as No. 2, the defendant asked the court to say to the jury, if the girl did not heed the warning, she was guilty of negligence and plaintiff could not recover. The court refused to give them as asked and inserted in one the words, "if any such hallooings and warnings were given and heard by her;" and in the other, the words, "if any such warning was heard by her." The defendant contends that this was error and cites Baker v. Railway, 122 Mo. 1. c. 549-595. The citation on page 595 is from the dissenting opinion of Judge SHERWOOD, and that on page 549 has no application. But it is held in cases of this kind where the warning is not heard it is not an available defense. In Baker v. Railway, 147 Mo. 160, where a "flying switch" was made, the court said: "The brakes were unset, it may be to get the necessary speed, and when he sees plaintiff's danger, he sets the brakes and stops the cars a hundred yards too late. True he yells or whistles, but he says it did not warn her. Counsel say that there is no statute against doing what it did at this time, and that there is no penalty incurred as in case of an engine going across a road without ringing a bell or sounding a whistle. I agree with them, but when they say that it follows from this that if an engine is not used, and cars alone are run across, that therefore in such case it need give a less effective warning to the traveler, I say it is a *non sequitur.* If the danger is increased by its neglect, I can not see why the law should for that reason suffer a less effective warning." It is true that the decision is applied to road crossings, but we see no good reason why it should not apply to a case like this, under the circumstances detailed.

But defendant says that the court committed error in failing to define what it takes to constitute a "flying switch." It was conceded on both sides that it was a flying switch, and such being the case, there was no such definition required. Under the conceded facts, the court should have told the jury that it was such a switch.

The amount of the verdict of the jury is attacked as the result of prejudice and passion. The amount returned was $1,372. The plaintiff remitted $31 of the amount, in order to make it correspond with the proof. The medical, surgical and nursing bills alone amounted to over $500. Proof of loss of services was over $800. We do not feel warranted in disturbing the verdict, under the circumstances.

Other points are made, but as they are not essential, we will not give them notice. Affirmed. All concur.