JOHN GODFREY, Respondent, v. THE KANSAS CITY LIGHT & POWER COMPANY, Appellant.

In the Kansas City Court of Appeals, January 8, 1923.

1. ELECTRICITY: Negligence: Negligence of Company Maintaining Uninsulated Electric Wire Through Row of Walnut Trees on Land Used as Recreation and Playground by Children and Others, Held Question for Jury. In a suit by a parent to recover damages for loss of services of minor child as result of injury received by coming in contact with an uninsulated electric wire, while in a walnut tree upon a tract of land privately owned, which had for many years been used by public as a gathering place and recreation ground and constantly in use by children as a playground where they had been accustomed to gather nuts from the walnut trees thereon, *held* that a power company maintaining an uninsulated electric wire running through a row of walnut trees, could have reasonably anticipated that a boy would climb one of the trees and come in contact with its wire and its demurrer to the evidence was therefore properly overruled.

2. ———: ———: Trespasser: Electric Light Company Held Not Relieved from Duty to Use Ordinary Care to Prevent Injury to Boy Because He Was a Trespasser upon Land of Private Owner Over Which it Maintained Uninsulated Wire. Assuming that injured boy was a trespasser as to private owner of land upon which he was gathering walnut nuts and over which an uninsulated electric wire was maintained by an electric light company, he was not a trespasser as to the electric light company, and his trespass upon the land did not relieve light company of the duty to use ordinary care, under the circumstances shown, to prevent injury to him.

3. ———: ———: Contributory Negligence: Boy Held Not Guilty of Contributory Negligence as a Matter of Law in Coming in Contact with Uninsulated Wire Which Injured Him. Where there was no

„direct evidence that a, boy, injured by an uninsulated electric
wire, knew that the wire was not insulated or that he purposely
touched the wire, there being testimony that he did not know of
its presence at the place where he came in contact with it, *held*
that he was not guilty of contributory negligence as a matter of
law.

4. PARTIES: Misjoinder: Waiver: Failure of Mother to Join Father
in Action for Loss of Services Occasioned by Injury to Minor
Child, Held Waived by Answering and Going to Trial Without Ob-
jection. Assuming that under section 371, Revised Statutes 1919,
the right to recover for loss of services occasioned by the injury
of a minor child is vested jointly in the father and mother and
must be prosecuted by them jointly, the failure of the mother to
join amounted merely to a misjoinder and by answering and
going to trial without objection, defendant waived the same, par-
ticularly where the mother, during the trial, filed a written re-
linquishment to the father of any claim or right that she might
have to the services of the minor and waived any right she might
have to recover damages by reason of injury to child.

5. INSTRUCTION: Instruction Imposing Duty on Defendant to In-
sulate Wire, if Jury Found Facts With Reference to Its Location,
Held Not Erroneous as Requiring Defendant to Use More Than
Reasonable Care. An instruction for plaintiff which required jury
to find in detail the character of the place where plaintiff's son
was injured by coming in contact with defendant's electric wire
with reference to its being a place frequented generally by children,
the kind and description of the tree climbed by boy and the
proximity of the live wire thereto, *held* not erroneous because it
directed a verdict if the jury found that the wire was uninsulated
and could have been insulated and made harmless, and the in-
struction did not thereby impose upon defendant a greater burden
than to use reasonable care.

6. ———: An Instruction Which Assumed That Electric Wire Could
Have Been Insulated, Held Not Erroneous. Where there was evi-
dence by defendant that isolation was within the term insulation,
and that insulation by space was one of the best insulators known
to the electrical world, and it was undisputed that defendant's
wire could have been insulated by isolation, an instruction was
not erroneous as assuming that the wire could have been insulated.

7. ———: Pleading: Contributory Negligence: Where Instruction Did
Not Have Jury Find Certain Facts Alleged in Petition Negativing
Contributory Negligence, it Was Not Erroneous as the Jury Were
Required to find by the Instruction, in Order to Render a Verdict
for Plaintiff, That He Was Not Guilty of Contributory Negligence.

Godfrey v. K. C. Light & Power Co.

Allegations in petition that injured boy did not know of danger created by uninsulated wire and that he was unable to see or know of position of wire, constituted no part of the charge of negligence against the defendant, but were pleaded to negative contributory negligence, and an instruction was not improper because it did not require jury to find such facts, where instruction required the jury, before it could find for plaintiff, to find that he was not guilty of contributory negligence, which was defined in another instruction for plaintiff, and one of defendant's instructions likewise submitted to the jury, the question of plaintiff's contributory negligence.

8. ———: Refusal of Instruction Precluding Recovery if Boy Could Have Discovered Dangerous Wire Which Ignored Question of Ordinary Care, Held Properly Refused. The refusal of an instruction which told the jury in effect that if boy knew or could have discovered by any means that there was a dangerous wire, with which he might come in contact, he could not recover, *held* not error as instruction wholly ignored the question of ordinary care.

9. VARIANCE: Pleading: Instruction: No Substantial Variance Between Petition and Instruction as to Remedying and Removing Dangers and Conditions With Respect to Electric Light Wire. There was no substantial variance between allegations of petition alleging public nature of place frequented by children, the situation and character of electric light wire which injured plaintiff's son, and that such facts were known by defendant or could have been known by it by the exercise of ordinary care in time to have "remedied said condition," and an instruction for plaintiff requiring a finding that defendant had known said conditions long enough prior to injury to have insulated said wire and "remedied and removed said dangers and conditions."

10. INSTRUCTIONS: Instruction Held Not to Give Roving Commission to Jury to Convict Defendant of Negligence, as it Required Jury to Find Facts Necessary to Recovery by Plaintiff. Where an instruction for plaintiff required jury to find that if electric light where "by use of ordinary care could have been insulated and made harmless" and that defendant could have known of such fact long enough prior to injury to plaintiff's son to have insulated wire and remedied and removed said dangers, etc., *held* not a roving commission to convict defendant of negligence, particularly as jury was also required to find the character of the ground, the nature and description of tree climbed by plaintiff's son, the situation of the wire, and that it carried a deadly current of electricity.

11. ———: An Instruction Hypothesizing Facts Necessary to a Recovery and Submitting Question as to Negligence of Defendant,

Held Not to Submit a Question of Law. Where an instruction after hypothesizing the facts necessary to a recovery, concluded by having jury find that in so maintaining said power wire and in failing to insulate the same defendant was guilty of negligence *held* not to submit a question of law to jury in view of other facts set forth in instruction which jury were also required to find before rendering verdict for plaintiff.

12. ———: **Where Cause of Injury Fully Known, an Instruction on Accident Had no Place in the Case.** Where the cause of injury was fully known, the court properly refused an instruction on accident, as it had no place in the case, and particularly where the instruction did not define the term accident.

13. ———: **Degree of Care: Contributory Negligence: An Instruction Not Erroneous in Placing Burden upon Defendant to Show Want of Care and Contributory Negigence on Part of Boy.** In an action for loss of services of boy injured by coming in contact with uninsulated electric light wire, an instruction was not erroneous in placing upon defendant the burden of showing that boy failed to exercise such care as would "usually be exercised by ordinarily careful and prudent children of the same age, experience and capacity, and in submitting that if the boy exercised such care for his own safety he was not guilty of contributory negligence.

14. **APPEAL AND EORROR: Misconduct of Counsel: Where Both Sides Exhibited Injured Boy to Jury and Only Misconduct of Counsel Charged Was in Calling Jury's Attention Thereto, Defendant Held in no Position to Compain.** Where there was considerable exhibition of injured boy to jury by both sides, and the only misconduct of counsel complained of is that boy's injuries were constantly presented and attention called argumentatively to his real and supposed injury, defendant held in no position to complain.

15. **TRIAL PRACTICE: Motion to Strike Out: Direction of Court to Jury to Disregard Parts of Answer Requested to be Stricken Out, Held Not to Have Been Misunderstood by Jury.** A motion to strike out answer of witness in relation to manifestations of injuries of plaintiff's son and that he complained of his eyes, *held* clearly to have referred to such testimony and an instruction by court to jury to disregard the parts of the answer outlined by defendant's counsel could not have been misunderstood.

16. **EVIDENCE: Evidence of Various Manifestations of Nervousness on Part of Injured Boy Held Admissible.** In a suit to recover for loss of services of plaintiff's son, evidence of various manifestations of nervousness on the part of injured boy, such as peculiar

movements of injured arm and hand, and his crying out and jumping in his sleep, *held* admissible.

17. **DAMAGES: A Verdict of $4,910 Awarded Father for Loss of Services of Thirteen-Year-Old Boy, Held Not Excessive.** Where jury could find that a child thirteen years of age was incapacitated for earning anything, and that he will be an expensive charge to father until he reaches his majority, and that father has already incurred large expenses, a verdict of $4,910 *held* not excessive.

Appeal from the Circuit Court of Jackson County.—*Hon. Samuel A. Dew,* Judge.

AFFIRMED.

*Garrett, Howell & Boley, John J. Hyde, Atwood, Wickersham, Hill, Levis & Chilcott* for respondent,.

*John H. Lucas, William C. Lucas* and *Ludwick Graves* for appellant.

BLAND, J.—This is a suit brought by the father for the loss of services of his boy, a minor thirteen years of age. There was a verdict and judgment in favor of plaintiff in the sum of $4,910 and defendant has appealed.

Defendant contends that its instruction in the nature of a demurrer to the evidence should have been given, that there was no negligence on the part of the defendant shown and that the minor was guilty of contributory negligence as a matter of law. The facts stated in their most favorable light to plaintiff show that plaintiff's son on August 10, 1919, in company with three other children, was gathering walnuts in McElroy's pasture, consisting of 205 acres of land ly ng about three-fourths of a mile from the city limits of ansas City, Missouri. Defendant had put up and ma ained an uninsulated electric wire, having a charge or 2300 volts, across a portion of the pasture and running through a row of walnut trees. On the day in question James Godfrey, plaintiff's son, then about twelve years of age, went in-

to the pasture at the direction of his father to look after some of the latter's stock being pastured there. After attending to this errand he and one of the other children ascended a walnut tree through the limbs of which, and eighteen feet above the ground, passed the wire in question. The wire came within six or eight inches of a limb three and a-half to four inches in diameter. This three was a small one about thirty feet in height and ten inches thick at the base. It grew in an angling or leaning position and had numerous low limbs so shaped that it was very easy for children to climb it. The tree was in full leaf and heavy with foliage.

Plaintiff's son and another boy climbed the tree to shake the walnuts while the other boys remained on the ground to pick them up. While plaintiff's son was coming down the tree backwards his hand touched the heavily charged bare electric wire and he immediately lost his balance, his foot slipped and his face struck the wire as he was grabbing it with his left hand. The boy testified that the touching of the wire was what made him slip and fall. He was grabbed from below by one of the boys who was so shocked by the current that he dropped plaintiff's son. While the latter was against the wire the other boys saw flashes of light coming from the electric wire. Plaintiff's son was rendered unconscious and there emanated from him the odor of burning flesh. The boy was taken in an unconscious condition to his home and remained there seventeen days when he was removed to a hospital for treatment and extensive skin grafting. He staid at the hospital six weeks where skin was removed from other parts of his body and grafted upon his chin, forehead and face. His ear was burned loose from the face and was not again attached. His left hand was burned to such an extent that at the time of the trial, which was about a year and a-half after the injury, he had only partial use of it. This hand has not grown with the right hand and is smaller, is without strength and is so susceptible to air

that it gets numb and he has to keep it covered. A physician described the hand as "shrunken." It was from one-half to three-fourths of an inch smaller than normal and the muscles had become atrophied. There is evidence that the injury to the hand is permanent.

The boy's face was badly burned and has a red scar upon it. He described the effect of a thick scar that was on his face as "drawing." This sensation grows worse. His eyes are affected and his head aches constantly. He is required to wear glasses and has difficulty in studying. An oculist testified that he made an examination of the boy and found that he suffered from chronic catarrhal conjunctivitis in both eyes; he had inflammation of the optic nerve and the retina, suffering from optic neuritis and retinitis. There was permanent dead tissue and degeneration of the optic nerve and permanent impairment of the vision. The evidence shows that an electrical burn is one of the most severe known; that as the result of his burns the boy is stunted in growth and has grown none since his injury; that before his injury he was a strong, healthy boy. His nervous system is affected and he suffers constant twitching movements and his sleep is disturbed. He jumps in bed, at times calling out, "Mama, Mama, Oh, Mama!" The muscles of his face are affected. A physician testified that, "There is an obscure result from the effect of electricity on the human system that is not accountable for to the fullest extent now," and "it stunts, stops the growth, destroys the nerve centers, as it has done in this case." A surgical operation to attach the ear is necessary, this would require an outlay of $250. Doctor's bills have been incurred to the extent of $350 and the hospital fee was from $150 to $200.

Additional facts in relation to the place where the injury occurred show that the McElroy pasture was situated in a more or less thickly settled community between the towns of Sugar Creek and Mt. Washington, which it joined. It also lay adjacent to a large oil re-

213 M. A.—10

finery. There were 100 to 150 houses in the general vicinity of the place and a schoolhouse not far distant. For many years the land had been used as a gathering place and recreation ground. People would come and gather nuts and papaws. There was a swimming pond which children frequented, there being fifteen to twenty in the pond at one time. Boys had played around the pond to such an extent that an eight foot embankment had been worn down to eighteen inches. Children would play at digging caves and building dams and base ball. It was a favorite place for picnics; people fished in the pond and the caretaker was known to fish with a boy in one instance. School children were taken there by their teachers to gather flowers in connection with their studies. Sometimes there were as many as twenty-five boys in the enclosure. There were no signs forbidding entry before the injury to plaintiff's son. There was a stile erected which was used in entering. The fence was torn down in one place. There was a cave on the premises which was frequented by children. Boy scouts tented on the place. Plaintiff's son had played there frequently before his injury without objection or protest from anybody. Boys were seen coming from the pasture with the walnuts they had gathered there. The place for four or five years before the injury had been used as a recreation ground by a great many people. As many as fifty or sixty would be there at a time eating their lunch and picnicking. In short, the record shows that this pasture had for a long time been used as a gathering place and recreation ground by the public and was constantly in use by children as a play ground. Defendant introduced some evidence tending to show that people were ordered out but the evidence of plaintiff tends to show that no objection was made.

For a number of years defendant maintained two bare wires running from the streets adjacent to this land and across it and directly through the row of walnut trees. These wires carried electricity to the district

thereabouts and to a large house on the ground. Plaintiff had seen employees of the defendant out there fifty times or more working on the wires. These wires were entirely barren of-insulation. The uninsulated wires had been there about four years prior to the time of the injury. When they were placed there other wires were removed that were insulated. It was feasible and practical to insulate the wire that injured plaintiff's son. These wires could have been easily placed above or on either side of these walnut trees and been isolated. One of defendant's witnesses testified that isolation was one of the best methods of insulating wires known to the electrical world. There was testimony that in electrical circles it was understood that there should be special caution taken to insulate high power lines running through parks or places where people gather.

We think that the negligence of the defendant was fully established. In view of the fact that this ground was, and had been for a great many years prior to the injury, constantly frequented by children, and in view of the well known tendency of children to climb walnut trees to gather nuts (in this case the evidence that walnut trees on the McElroy place were frequented by children for that purpose), we think there is no question but that defendant could have reasonably anticipated that a boy would climb the walnut tree in question and come in contact with its high power uninsulated electric wire. Therefore there is evidence in the record to show negligence on the part of the defendant, and defendant's instruction in the nature of a demurrer to the evidence was properly refused. [Williams v. Gas & Electric Co., 274 Mo. 1; Thompson v. City of Slater, 197 Mo. 247; Temple v. Electric Light, etc., Co., 89 Miss. 1; Kribs v. Jefferson City Light, etc., Co., 199 S. W. 261.]

Assuming that plaintiff's son was a trespasser on the McElroy ground, this would not relieve defendant of the duty to use ordinary care, under the circumstances shown, to prevent an accident of this kind. Plaintiff's

son was not a trespasser as to defendant. [Williams v. Gas & Electric Co., supra, l. c. 11; 17 A. L. R. 849-853; Kribs v. Light, etc., Co., supra.] Plaintiff's son was not guilty of contributory negligence as a matter of law. There was no direct evidence that he knew that the wire was not insulated or that he purposely touched the wire. There was testimony that he did not know of the presence of an electric wire. [Williams v. Gas & Electric Co., supra, l. c. 12, 13.]

It is insisted that the demurrer to the evidence should have been sustained for the reason that the suit was brought by the father alone without joining the mother, and that under the provisions of section 371, Revised Statutes 1919, the right to recover for loss of services occasioned by the injury of a minor child is vested jointly in the father and the mother and must be prosecuted by them jointly. Assuming that this statute is to be so construed, the failure of the mother to join amounted merely to a misjoinder, and by answering and going to trial without objection defendant waived the right to now insist upon the point. [Eastman v. United Rys. Co., 220 S. W. 508.] We have examined the cases cited by the defendant and find that they involve situations where a cause of action not permitted to be prosecuted at common law is created or transmitted by statute, the statute giving to certain parties the right to sue. In those cases it was held that where the evidence failed to prove or the petition failed to charge that plaintiff was the party designated by the statute as having the cause of action, the demurrer to the evidence should have been sustained. [See Barker v. Railway Co., 91 Mo. 86; Hennessy v. Brewing Co., 145 Mo. 104; Clark v. Railroad Co., 219 Mo. 524.] However, this case differs from those cases in the fact that the cause of action involved here is not created by the statute but is a common-law cause of action, the statute merely providing that both parents instead of the father (who alone was entitled to the earnings of the minor children at common law) should have the right to such earnings.

At the conclusion of the evidence and after the interposition of a demurrer to the evidence the mother of James Godfry filed a written relinquishment to plaintiff of any claim or right that she might have to the services of the minor, and waiving any right she might have to recover any damages by reason of the injuries to James Godfrey complained of. It would seem that this would estop the mother from thereafter asserting any right or cause of action against the defendant for the negligent injury to her son. [Chesapeake & Ohio Ry. Co. v. Davis, 58 S. W. 698 (Ky.).]

Complaint is made of plaintiff's instruction No. 1. This instruction is of such length and the objections to it are of such little merit that we are not justified in copying it into the opinion. The instruction covered the entire case and directed a verdict. It had the jury find that "said child was then . . . and is a son and servant and resides with and is supported by plaintiff." The objection that the instruction is erroneous because the law vests the cause of action in the parents of the boy instead of the father, is without merit. We have already passed upon this question in discussing the matter of misjoinder of parties.

It is next insisted that the instruction is erroneous for the reason that it directs a verdict if the jury find that the wire was "uninsulated" and could have been "insulated and made harmless," while the duty upon the defendant was to use reasonable care, and that it is further erroneous because the evidence shows that the wire was of the kind that was in common use by all other companies engaged in like business under similar circumstances. The instruction in addition to using the words quoted has the jury find in detail the character of the place in reference to its being a place frequented generally by children, the kind and description of the tree and the proximity of the live wire to it. If the jury found all the facts submitted in the instruction to be true, then it was the duty of the defendant to in-

sulate and make harmless the wire.    [Williams v. Gas & Electric Co., supra.]

It is true that the instruction tells the jury if they found the facts hypothesized that it was the duty of the defendant ''to have insulated said wire and remedied and removed said dangers and conditions.'' While there was evidence for defendant that there was no covering that could have been put on the wires that would have afforded sufficient insulation to have prevented the injury, defendant's witness Bettis included isolation within the term insulation. He testified that one of the first principles of insulation was isolation and that insulation by space is one of the best insulators known to the electrical world. This evidence is not contradicted. The record is undisputed that this wire could have been insulated by isolation and in view of this testimony we do not think that the assumption in the instruction that the wire could have been insulated was improper.

In a separate paragraph from that charging negligence against the defendant, the petition alleges that the boy ''did not know of the danger created by said wire'' and ''that he was unable to see or know of the position of said wire.'' The instruction does not expressly have the jury find these facts. Therefore it is insisted that the instruction does not submit the issues tendered by the pleadings. These allegations in the pleadings constituted no part of the charge of negligence against the defendant but were inserted in order to negative contributory negligence. The instruction required the jury before it could find for plaintiff to find that he was not guilty of contributory negligence. Contributory negligence was defined in plaintiff's instruction No. 2 as— ''. . . any failure to exercise such care for one's own safety as would usually be exercised by an ordinarily careful and prudent person under circumstances the same or similar to those shown in evidence, where such failure is an efficient contributing cause in producing the injury complained of.''

Defendant's given instruction E likewise tells the jury that plaintiff could not recover if his boy was guilty of *any* lack of ordinary care for a boy of his age, etc.

Defendant complains in this connection of the refusal of the court to give its instruction C, which told the jury in effect that if the boy knew or could have discovered by any means that there was a dangerous wire, he could not recover, wholly ignoring the question of ordinary care. Of course this instruction was properly refused.

The petition alleges facts showing the public nature of the place; that it was frequented by children, the kind and description of the walnut tree, the situation and character of the wire, and charged that these facts were known by the defendant, or could have been known by it by the exercise of ordinary care "in time to have remedied said condition." Plaintiff's instruction No. 1 follows the petition but says that if defendant knew of the conditions long enough prior to the injury to have "insulated said wire and remedied and removed said dangers and condition, if any." It is insisted that the petition charges one thing, that is, that defendant could have remedied "said condition" while the instruction says that defendant should have "remedied and removed said dangers and conditions." We see no substantial variance between the charge and the submission in this respect. The instruction also has the jury find that if the wire "by the use of ordinary care could have been insulated and made harmless" and by the exercise of ordinary care defendant knew or could have known this fact long enough prior to August 10, 1919, "to have insulated said wire and remedied and removed said dangers" etc. It is insisted that this was a roving commission to the jury to convict the defendant of negligence. There is no merit in this contention, for the reason that in addition to having the jury find such fact, the instruction also has the jury find, as before stated, the character of the ground, the nature and

description of the tree, the situation of the wire and that it carried a deadly current of electricity.

The instruction after hypothesizing the facts necessary to a recovery concluded by having the jury find that in "so maintaining said power wire and in failing to insulate said wire, defendant was guilty of negligence." It is insisted that this submits a question of law to the jury. This is wholly without merit in view of what went before in the instruction.

Defendant's instruction D was properly refused for the reason that it was an accident instruction. The term accident is not defined and has no place in the case in any event as the cause of the injury was fully known. [Tillery v. Harvey, 214 S. W. 246, 249.]

Complaint is made of plaintiff's instruction No. 2. This instruction does not purport to cover the entire case or direct a verdict but merely defines the terms "ordinary care," "utmost care" and "contributory negligence." It tells the jury that children are required to exercise such care as would "usually be exercised by ordinarily careful and prudent children of the same age, experience and capacity;" that if "James Godfrey exercised such care for his own safety" he was not guilty of contributory negligence. The contention that the instruction told the jury that James Godfrey was not required to exercise ordinary care for his own safety and that defendant was required to exercise the utmost care and *any* failure to exercise such care was negligence in this case, is without merit.

Complaint is made of instruction No. 3. The point made in reference to the instruction is obscure. We assume that what is meant is that the meaning of the instruction is vague and that it is subject to two constructions. We have examined the instruction and find no criticism can be made of it. It places the burden upon defendant to show contributory negligence, that is, that James Godfrey failed to exercise such care as an ordinarily careful and prudent person of his then age,

capacity and experience would have exercised for his own safety under the same or similar circumstances, and that such contributory negligence was the efficient contributing cause of the injury. [Whalen v. Railroad Co., 60 Mo. 323, 327.]

Complaint is made of instruction No. 4 because it allows recovery under the facts hypothesized even though James Godfrey was a trespasser as to the owners of the ground. We stated supra that the fact that James Godfrey was a trespasser, if he was, as to the owners of the ground would not authorize a verdict for defendant as James Godfrey was not a trespasser as to the defendant. Therefore, the instruction was not erroneous.

Numerous complaints are made in regard to the reception and rejection of evidence and alleged misconduct of counsel for plaintiff. The only misconduct of counsel complained of in the motion for a new trial is that in "constantly presenting James Godfrey . . . and calling the attention argumentatively to his real or supposed injury." There was considerable exhibition of the injured boy to the jury by both sides and we do not think the defendant is in a position to complain. A motion was made to strike out the answer of the witness in relation to the manifestations of injuries made by plaintiff's son. The motion clearly referred to the testimony that the injured boy complained of his eyes. After some argument the court instructed the jury to "disregard the parts of the answer outlined by defendant's counsel." It is insisted that the court left to the jury to determine what parts of the answer should be stricken out, but we think that the jury could not have misunderstood. Objection was made to various manifestations of nervousness on the part of the injured boy, such as peculiar movements of the injured arm and hand and the crying out and the jumping in his sleep. There was no error in the admission of this testimony. There are various alleged instances of misconduct of counsel for plaintiff, but, as before stated, none are complained of in the mo-

tion for a new trial except a specific complaint as to the excessive exhibition of the injured boy to the jury. We do not think the court abused its discretion in the matter of ruling upon objections to leading questions.

It is last insisted that the verdict is excessive. We have already stated the nature of the injury to plaintiff's minor son and it is apparent that the jury could find that the child was incapacitated for earning anything; that he will be an expensive charge to plaintiff until he reaches his majority and that plaintiff has already incurred large expenses. As was said in Brunk v. Telephone Co., 112 Mo. 623, 628, 629—

". . . in cases where the parent, as here, sues for loss of service of his infant son, what that service will be no one can tell. . . . The extent and character of the injury should be made to appear; and the child's age should be known to the jury so that they might be advised of the time of his minority and liability to service," and having introduced evidence of these things—". . . a sufficient showing was made to call into requisition the sound sense and experience of the jury in fixing upon an amount as to the damage which plaintiff has suffered."

We are unable to say that the verdict in this case is so large as to warrant our interference with it.

The judgment is affirmed. All concur.