JAMES ROY PETTY and JUNIOR VIOLA PETTY v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 39834.—198 S. W. (2d) 684.

Division Two, December 9, 1946.

Rehearing Denied, January 13, 1947.

*Charles L. Carr, John T. Harding, R. Carter Tucker, John Murphy* and *William H. Wilson* for appellant.

828

*Gilbert R. Titus, William F. Knowles, Paul C. Sprinkle* and *Sprinkle & Knowles* for respondents.

██ BARRETT, C.—This is an action by James Roy Petty and his wife for loss of services, the cost of artificial limbs, special training, care and attention and doctor and hospital bills resulting from the appellant's negligence in running over their minor daughter, Ruth Viola. At the time of her injury, February 1, 1943, Ruth Viola was three years of age. She sustained other injuries (Petty v. Kansas City Pub. Ser. Co., 354 Mo. 823, 191 S. W. (2d) 653) but the plaintiffs' principal losses are due to the fact that her left leg was amputated about three inches below the knee.

██ As a preliminary it may be noted that the appellant assigns as error the refusal of its motions for a directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence and the action of the trial court in admitting in evidence a $295.00 bill from the Kansas City General Hospital. The appellant does not indicate why the motions should have been sustained. In addition, these three assignments are neither briefed nor argued and, for the purposes of this appeal, are abandoned. Supreme Court Rule 1.08; Womack v. Missouri Pac. R. Co., 337 Mo. 1160, 1169, 88 S. W. (2d) 368, 372; Evans v. Farmers Elevator Co., 347 Mo. 326, 330, 147 S. W. (2d) 593, 594.

██ The plaintiffs' case was submitted upon the hypothesization of a violation of three ordinances of Kansas City. The appellant contends that the court erred in admitting one of the ordinances in evidence and in excluding as evidence two ordinances offered by it. It also urges that the instruction submitting the plaintiffs' case was prejudicially erroneous because one of the ordinances relied upon had been repealed, was in direct conflict with the ordinances offered by the appellant and was erroneously included in the traffic ordinances

of Kansas City. It is further objected that the instruction erroneously makes the appellant an insurer of the safety of pedestrians.

As to the latter point, the argument is that because the instruction told the jury that the ordinances relied upon were in force and in reciting the substance of their provisions, among other things, said that under the ordinances the streetcar should not be operated, at such speed that the operator could not decrease it or stop the streetcar when necessary to avoid colliding with a person and then told the jury that if they found that the streetcar was operated at such speed that it could not be decreased or the streetcar stopped in time to avoid hitting the plaintiffs' daughter that thereby the appellant is made an insurer. It is not contended that the instruction in express language makes the appellant an insurer but it is argued that the language "could be interpreted by a jury of laymen to mean that regardless of the speed of the streetcar, if there were a collision with the plaintiffs' daughter the defendant was liable." The appellant says, under this instruction, that even though the streetcar could have been stopped in the shortest time and space possible yet if it struck the child the appellant would be liable. In the first place, in making its point, the appellant has separated two clauses from the context of a long instruction. Grubbs v. Kansas City Pub. Ser. Co., 329 Mo. 390, 45 S. W. (2d) 71. In the second place, the instruction is not comparable in language or effect to the one in Clardy v. Kansas City Pub. Ser. Co., 227 Mo. App. 749, 752, 42 S. W. (2d) 370, 371-372. Here the instruction correctly advises the jury of the substance and legal effect of the ordinances and hypothesizes the facts which the jury is required to find as constituting negligence and a violation of the ordinances. Petty v. Kansas City Pub. Ser. Co., 354 Mo. 823, 191 S. W. (2d) l. c. 657. The instruction is long and rather involved and though possibly subject to the appellant's rather strained construction does not in fact make the appellant an insurer as appellant's instructions positively advised the jury.

 Whether one of the ordinances was repealed is decisive of whether the instruction was erroneous as well as whether the court was in error in admitting it in evidence and in excluding the appellant's proffered ordinances. The respondents pleaded, offered in evidence and instructed upon Chapter 63, Section 3 of the 1941 Revised Ordinances of Kansas City, known in this record as Ordinance 7100 and particularly as Section 638 of the Traffic Code of 1928. This section was enacted as an ordinance in 1928 and provides that a streetcar shall not be run "at a greater rate of speed than fifteen miles per hour in the congested district" (defined as that portion of the city lying north of the south line of 19th Street and west of the east line of Troost) "nor more than twenty-five miles per hour in the noncongested district of the city." In 1940 a further traffic

ordinance, No. 6312, was enacted·and that ordinance was also included in the 1941 Revised Ordinances as a part of Ordinance 7100 and provides that a streetcar may not be operated ''at a greater speed than is reasonable'' and ''in any residence or business district'' (territory contiguous to a highway when fifty per cent or more of the frontage for a distance of 300 feet is occupied by buildings in use for business) ''may be operated at a speed of twenty-five miles per hour.'' It is the position of the appellant that the ordinance enacted in 1940 (the appellant offered the original ordinances) repealed the ordinance enacted in 1928 and, therefore, Ordinance 638 was included in the revised ordinances through error.

The appellant says: ''There could not be two speed limits for street cars in business districts, one of fifteen miles per hour and one at twenty-five miles per hour.'' It is argued that they are in direct conflict and, therefore, the later ordinance repealed the older one. Of course, if this is true, it was error to admit the ordinance in evidence and instruct the jury upon it. However, as the appellant concedes, the older ordinance was not repealed by number or in express terms by the later ordinance. If it had been it would not have been revived by inserting it in the new code without reenacting it and it is in this that the case differs from Fish v. Walsh, 323 Ill. 359, 154 N. E. 148 and City of Chicago v. Degitis, 383 Ill. 171, 48 N. E. (2d) 930. As the appellant argues, a mere revision of existing laws or ordinances into a code does not make the code a new law but only continues the former law and so, if there is a conflict between two provisions of the code a new or later section repeals the older. State ex rel. Attorney General v. Heidorn, 74 Mo. 410; City of St. Louis v. Kellman, 235 Mo. 687, 139 S. W. 443. But, in this situation, repeals by implication may only be found when there is conflict and the two laws or ordinances are irreconcilably inconsistent. 37 Am. Jur., Sec. 198; 2 McQuillin, Municipal Corporations, Secs. 875, 879. Here, there is no conflict in the ordinance's speed limit of fifteen miles an hour ''in the (defined) congested district'' and a reasonable speed up to twenty-five miles an hour in the defined ''business district.'' The older ordinance merely carves a ''congested district'' out of a ''business district'' and there is no irreconcilable conflict. City of St. Louis v. Weitzel, 130 Mo. 600, 31 S. W. 1045. The accident occurred at 12th and Harrison Streets, within a congested district, and there was no error in admitting the older ordinance (as it appeared in the 1941 Code) in evidence and instructing upon it to the exclusion of ordinances which the appellant claims repealed it by implication.

The appellant also urges that the court prejudicially erred in four respects in instructing the jury upon the measure of damages. It is urged that the instruction fails to limit the plaintiffs' recoverable losses to the period of Ruth Viola's minority; that the

use of the word "may" in describing the plaintiffs' recoverable pecuniary compensation does not delimit with certainty the damages awardable; that future medical and hospital expenses "necessarily" incurred were authorized by the instruction when there was no proof to support such an allowance and,. fourth, that the instruction erroneously permitted an allowance to the plaintiffs of the amount of earnings the child would necessarily lose until she reached her majority when the child's potential loss was not necessarily the same as the plaintiffs and, in this respect, it is also urged that the instruction is broader than the pleadings and proof and gives the jury a roving commission.

.In presenting the first point, however, the appellant quotes only the first clause of the instruction, separating the clause from its context. In three different places the instruction limits the plaintiffs' recovery to the period "until she reaches the age of twenty-one years" and if the appellant thought the instruction too broad or subject to misinterpretation should have offered an instruction limiting its effect. Kirk v. Kansas City Ter. Ry. Co. (Mo. App.), 27 S. W. (2d) 739. Considering the instruction as a whole the appellant's criticism is unwarranted. Grubbs v. Kansas City Pub. Ser. Co., supra.

 So it is with the objection to the use of the word "may" in describing the pecuniary compensation allowable for loss of services, the word carries the possible connotation of bare possibility and its use has been criticized (Evans v. Farmers Elevator Co., 347 Mo. l. c. 341, 147 S. W. (2d) l. c. 601) but up to the present we have failed to. find a case holding its use reversible error, especially so when the whole instruction is considered and the use of the word in its context does not appear to have positively misled the jury. Krinard v. Westerman, 279 Mo. 680, 698, 216 S. W. 938, 943.

 The instruction authorized as an element of damages "the reasonable value of any medical or hospital treatment . . . necessarily . . . incurred" until Ruth Viola reached her majority. The appellant emphasizes the word "necessarily" and insists that there was no evidence that future medical and hospital expense would necessarily be incurred and that, therefore, the jury was invited to base a verdict on speculation and conjecture. However, the doctor stated that the bones in the stump "might have to be readjusted often." Furthermore, in addition to the amputated leg, there was a long scar down Ruth Viola's right thigh extending over the knee. The doctor said that the scar contracted when the leg was straight, he could not say definitely whether there would be future contracting of the scar as the child grew but he said that the only way to remove the scar, and inferentially any future disability from it, was by plastic surgery. It may be that this evidence does not show that further medical and hospital expense would "necessarily" be incurred in the sense of not being capable. of being dispensed with or

indispensable (Boyd v. Andrae (Mo. App.), 44 S. W. (2d) 891, 894) but it is evidence from which the jury could find that such future expense was necessary in the sense of being needful and so we cannot say that there was such a lack of evidence that it was erroneous to include it as an element which "will necessarily be incurred." While the items are not definitely certain, they are not left wholly to conjecture and specualtion.

The appellant's fourth point, as we understand it, is that in the beginning the instruction permitted the plaintiffs' damages for "loss of service of their daughter" and subsequently said "you in addition may also allow the plaintiffs the amount of earnings of the daughter which you believe and find from the evidence she will necessarily lose until she reaches the age of twenty-one years." It is said that this language authorizes a double assessment for loss of earnings, that the child's potential loss is not necessarily the same as the parents and finally that there is no evidence that the child would lose earnings. As to the latter point, the doctor said that the child could not engage in industry or labor during minority, which the appellant argues leaves open to her numerous sedentary occupations which if she follows will not result in a loss of earnings. It is argued that the word "service" in the beginning of the instruction is not defined or limited and that if the word means "both loss of direct personal service to the parents and also loss of earnings to the child" then a double assessment for one loss is permitted. We do not believe the quoted clauses are reasonably subject to the interpretation the appellant ▇▇▇▇ places upon them. These clauses of the instruction, as we construe them, permit an award for loss of the child's services and any loss of earnings due to the child's injury during minority. Annotation 37 A. L. R. 11, 15. "The loss of earning capacity in a minor during minority is a loss to his parents who are entitled to both his services and his earnings." Evans v. Farmers Elevator Co., 347 Mo. 326, 341, 147 S. W. (2d) 593, 601. It is true that there is no direct evidence of any sums the child would or could earn during minority or of any specific occupations the child could or would not follow but these matters are not susceptible of direct proof. The child was three and one half years of age at the time of her injury and, of course, had never earned anything or performed any services for her parents. In this situation we have only the child's age, her previous physical condition and her present condition and in these circumstances the jury may only consider these facts in the light of their personal knowledge and experience in arriving at any lost services or earning capacity during minority. Meeker v. Union Electric L. & P. Co., 216 S. W. 933, 934. A contrary view is indicated by Schmitz v. St. Louis, I. M. & S. Ry. Co., 46 Mo. App. 380 but, as was pointed out in Blackwell v. Hill, 76 Mo. App. 46, the courts have not adopted or followed the Schmitz case on this point.

In conclusion on this point, it cannot be said, considering the instruction as a whole, that it contains errors so prejudicial to the appellant as to materially affect the merits of the action. Civil Code of Mo., Secs. 123, 140(b); Baxter v. St. Louis Transit Co., 103 Mo. App. 597, 609-612, 78 S. W. 70, 73-74; Meeker v. Union Electric L. & P. Co., supra; Blackwell v. Hill, supra.

Four of the appellant's assignments having to do with matters occurring during the trial of the cause, which the appellant claims were so prejudicially inflammatory that it was deprived of a fair trial, may all be considered together. There is a general assignment that upon the whole record the jury became unduly sympathetic with the plaintiffs and prejudiced against the appellant. In this connection, in his opening statement, plaintiffs' counsel described the manner in which Ruth Viola was injured and detailed the nature of her injuries. In his closing argument counsel pointed out the extra care and assistance required of the parents by reason of the child's artificial leg and said: ''There is a child that when she starts across the street they must assist her. There is a child they will have to remember when she goes to bed at night. They must take the leg off and lay it one place and place the child in bed at another place.'' When the child was run over she was accompanied by her aunt, Deloris Frakes, who at the time of the trial was twelve years of age. Deloris was offered as a witness and at the beginning of her testimony cried when asked about the accident. At the time the court said: ''Of course, she has been crying rather vigorously here when asked about the accident, but I do not see how it can be controlled very well at her age.'' At the commencement of the trial the appellant objected to Ruth Viola's presence in the courtroom and again, on the second day of the trial renewed its objection stating that her presence, sleeping in her mother's arms and lap and moving about in the presence of the jury unduly aroused the jury's sympathy. When the question first arose the court made some inquiry into the situation and stated that it was impractical under the circumstances to exclude the child.

Counsel's statement and argument to the jury and Deloris' crying were not so inflammatory as the similar occurrences in the child's case. Petty v. Kansas City Pub. Ser. Co., 354 Mo. 823, 191 S. W. (2d) l. c. 658. The argument and emotional demonstrations here are not comparable to the argument and incidents in Chawkley v. Wabash Ry. Co., 317 Mo. 782, 297 S. W. 20; Walsh v. Terminal Ry. Co., 353 Mo. 458, 182 S. W. (2d) 607. The trial court considered these matters and we cannot say that they were so obviously and unduly prejudicial that the court abused its discretion in not discharging the jury or in not granting a new trial. Kelley v. Illinois Central R. Co., 352 Mo. 301, 177 S. W. (2d) 435; Borrson v. M K.-T. Ry. Co., 161 S. W. (2d) 227, 232; Cordray v. City of Brookfield

(Mo.), 88 S. W. (2d) 161. Ruth Viola was not a party to this suit, neither was she a witness and so, while there is an analogy in the cases dealing with the problems of the exclusion or sequestration of witnesses and parties, (6 Wigmore, Evidence, Secs. 1837-1841; Bryant v. Kansas City, 286 Mo. 342, 228 S. W. 472) they are not necessarily identical with the question presented here. Here Ruth Viola's presence was not necessary either as a party or as a witness and, as far as necessity is concerned, was solely for the personal convenience of the plaintiffs or as the trial court said, it was impractical under the circumstances to exclude her. If the child's presence, either temporarily or continuously, tended to unduly and unnecessarily arouse the jury's sympathy or prejudice she should have been excluded from the courtroom. 64 C. J., Sec. 65. On the other hand, and we express no opinion on the subject at this time as she was not exhibited as evidence, it may be that the jury should see the child and thus have some idea of the future care required of the parents and of her future ability to earn. In this respect the fundamental problem may differ from the questions arising upon the presence or exclusion of the widow and children upon the trial of a wrongful death action or the presence of children at the trial of a parent's personal injury suit. Western Truck Lines v. Berry, 53 Ariz. 216, 87 Pac. (2d) 484; Louisville & N. R. R. Co. v. Kelly, 19 Ky. L. R. 69, 38 S. W. 852. But, even though it be assumed that the jury could or should see the child, it does not necessarily follow that she should be permitted to remain in and about the courtroom for the duration of a three day trial in which she was neither a party nor a witness, especially so if there was likelihood of preventable emotional outbursts or the jury was likely to become unduly inflamed or prejudiced by reason of her presence. Some incidents or conditions naturally arouse a certain amount of sympathy and yet they cannot be held to constitute error, for example, exhibiting pictures of Ruth Viola's injuries in the other trial. Petty v. Kansas City Pub. Ser. Co., 354 Mo. 823, 191 S. W. (2d) 1. c. 658. On the other hand, incidents, conduct or conditions not in same manner connected with the trial of the cause may be so inflammatory and prejudicial as to necessitate a new trial. 53 Am. Jur., Secs. 41-42, pp. 54-56. It may also be noted that in considering all these matters we are separating them from the context of a two and one half or three day trial and thus may over-emphasize or exaggerate their influence and effect. But, whether the child's continued presence in and about the courtroom unduly aroused the jury's sympathy and whether she should have been excluded is another matter, which, under the circumstances of this case, must be left to the discretion of the trial court and we cannot say upon this point and upon the whole record that the court abused its discretion. Stratton v. Nafziger Baking Co. (Mo. App.), 237 S. W. 538, 544-545; Annotation 131 A. L. R. 323.

Ten members of the jury returned a verdict for $20,000.00. Upon motion for new trial the court required a remittitur of $8,000.00 and judgment was entered for $12,000.00. The plaintiffs' hospital expense was $295.00 and they owed Dr. Petry $75.00. The first artificial leg and foot cost about $140.00. Throughout the years as the child grows it will be necessary to purchase new artificial legs every two or three years until age twelve and possibly not so often after that. The new legs will cost from $150.00 to $200.00. It is necessary to buy stockings for the stump rather frequently, the appellant estimates the maximum cost of the stump stockings at $380.00, and shoes on the artificial foot do not last as long as they do on her other foot. The appellant points to these items and contends that the verdict is yet excessive and not reasonably uniform with verdicts approved in similar cases, even conceding some change in economic conditions. Petty v. Kansas City Pub. Ser. Co., 354 Mo. 823, 191' S. W. (2d) l. c. 659. It is not necessary to again discuss in detail the allowable damages in this type case but the verdicts of $1,372.00 in Lange v. Missouri ██ Pac. R. Co., 115 Mo. App. 582, 91 S. W. 989, $3,350.00 in Samples v. Kansas City Rys. Co. (Mo. App.), 232 S. W. 1049, $4,000.00 in Williams v. Fleming, 218 Mo. App. 563, 267 S. W. 6 and $3,000.00 in Bryant v. Kansas City Rys. Co. (Mo. App.), 217 S. W. 632 do not necessarily mean that they represent maximum sums allowable or that verdicts in similar cases must conform to those cases. In Meeker v. Union Electric L. & P. Co., 279 Mo. 574, 216 S. W. 933, a boy fourteen was horribly injured, possibly totally incapacitated and a verdict to his parents for loss of services for $9,500.00 was approved. In the unusual case of Scanlon v. Kansas City, 325 Mo. 125, 28 S. W. (2d) 84 the court did not discuss the reasonableness of the $17,500.00 award for loss of services and expenses. But neither are these two cases necessarily controlling here. As the appellant concedes, the exact value of the child's services and the exact value of its earnings during minority cannot be accurately computed or proved and it is necessarily inherent in such cases that much must be left to the common sense, experience and judgment of the jury in the light of the few facts and data made available. This child, injured when she was three and one half years of age, will likely be totally incapacitated in a financial sense for most of her minority so far as earnings are concerned. Godfrey v. Kansas City L. & P. Co., 213 Mo. App. 139, 247 S. W. 451, 456. The trial court considered and directly passed upon the excessiveness of the verdict when it required a remittitur of $8,000.00. Schaefer v. Transamerican Freight Lines (Mo.), 173 S. W. (2d) 20, 25. Considering all these circumstances we cannot say that the verdict is yet excessive.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.