DOTTIE ANN BROWNE, By Her Father And Next Friend, ARTHUR O. BROWNE, v. VERNER V. CREEK, Defendant, E. E. ANDERSON and J. E. CUNNINGHAM, Appellants.—No. 40285.—209 S. W. (2d) 900.

Division Two, March 8, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, April 12, 1948.

*Lynn M. Ewing, Paul C. Sprinkle, William F. Knowles* and *Sprinkle & Knowles* for appellants.

357 Mo.—37.

578

*Trusty & Pugh, Guy W. Green* and *W. T. McCafree* for respondent.

[902] BARRETT, C.—Late in the afternoon of .January 10, 1946, about 5:30, the appellants' Ford delivery truck was driven off the pavement on Highway 54, near Nevada, to avoid colliding with another truck. The shoulder was wet and muddy and when the driver attempted to get the truck back onto the pavement it slid down the north shoulder and the rear wheels became mired in the ditch. When it finally became impossible to move the truck it had so slid that the rear wheels were yet in the ditch and the front wheels were pointed "a little to the left diagonally (southwest) across the highway." The truck remained in that position with its lights on until after

12:30. About eleven o'clock Mr. Creek of Walker, his wife and his son, came along and the truck driver enlisted their assistance. They turned around and drove about five miles into Nevada and procured a wrecker to get the stalled truck out of the ditch. When they stopped the second time, on their way home, the driver asked them to remain until the wrecker arrived as he wanted them to take him to Nevada for the night in the event the wrecker did not come. The Creek automobile was headed east and because of the muddy shoulder was stopped with its right wheels upon the pavement. The plaintiff, Dottie Ann Browne, and five other high school boys and girls from El Dorado Springs had been to a basketball game at Rockville in Eugene Dale's automobile. They had stopped in Nevada for hamburgers. As they drove east on Highway 54, on their way home, at a speed of thirty-five or forty miles an hour they came over a hill or grade and saw the lights of the stalled truck pointed across the highway. It was "kind of foggy, just a dreary day" and the pointed lights illuminated the mist and "shortened" Eugene's vision and as their car came out of the lights it crashed into the rear of Mr. Creek's car, tearing a hole in the gasoline tank. Dottie Ann was hurled from the car onto the burning pavement.

To recover for her resulting injuries this action was instituted against Mr. Creek and the appellants who owned the delivery truck. The jury exonerated Mr. Creek and found against the appellants in the sum of $10,000 upon the charge that "defendants Anderson and Cunningham negligently parked an automobile close to the highway with blinding headlights, and defendant Creek negligently parked on the highway and without lights, and the negligence of the defendants concurred in causing the collision and in that defendants negligently failed to keep a lookout, and negligently helped to cause the Creek automobile to be standing on the slab."

Upon this appeal the preliminary point is made that the court erred in denying the appellants' application for leave to file a third party petition bringing in Eugene Dale. Mo. R. S. A., Sec. 847.20. In this connection the appellants urge that the sole proximate cause of the collision was Eugene's taking an unreasonable chance in driving through the fog and lights at forty miles an hour and therefore the court abused its discretion in denying the application. However, the appellants' application and proposed petition, with reference to [903] Eugene as a third party, did not assert any claim whatever against him. It was only claimed and asserted that Eugene's negligence was the sole proximate cause of the collision and injuries complained of.

The plaintiff declined to amend her petition so as to include Dale as a party defendant, whereupon the trial court denied the defendant's application for leave to include him as a party. While there has been some diversity of opinion as to the right of a defendant

to tender an additional third party defendant alleged to be solely liable for the injuries complained of and who is not liable to the defendant, it has become the better accepted and the better reasoned view, in the circumstances of this record, that there is no abuse of discretion when the trial court refuses the application. General Taxicab Ass'n. v. O'Shea, 109 F. (2d) 671 (concurred in by Mr. Justice Rutledge and Chief Justice Vinson); Satink v. Holland, 31 F. Supp. 229. This subject and all the cases relating to it is fully discussed in the well-considered opinion in Rutherford v. Pennsylvania Greyhound Lines, 7 F. R. D. 245.

On the merits, the appellants contend that the trial court should have sustained their motion for a directed verdict for the reason that there was a fatal variance in the plaintiff's pleading and her proof. There was no impact with the appellants' truck and it is urged that there was an intervening sole cause of the collision with Creek's automobile, Eugene's driving through the fog in disregard of the angling lights. In this connection it is urged that the court erred in giving the plaintiff's first instruction because it omitted the defense of sole cause, did not follow the pleadings and proof, did not contain facts limiting the jury's consideration to the evidence, incorrectly charged on concurrent negligence and, finally, did not hypothesize facts demonstrating a legal obligation from the appellants to the plaintiff and a breach of that duty or obligation.

The appellants develop their argument by first analyzing the petition and contending that it charges, concerning the lights, specific negligence of failure to warn and failure to keep a lookout. Otherwise, it is said, there is no charge of negligence with respect to blinding lights. There was no proof or submission of failure to warn or failure to keep a lookout and therefore, it is urged, that there was a variance in the pleading and proof and consequently error in submitting the cause because the truck lights constituted but a condition about which, under the allegations, the appellants were obliged to do some specific thing—warn, or lookout—before they could be charged with negligence in respect to the lights. There being no proof or submission of the specific things, failure to warn and keep a lookout, it is urged that there was a total failure of proof. It is argued that the truck driver, in his relationship with Mr. Creek, was not acting in the scope and course of his employment and that the charge "negligently helped to cause the Creek automobile to be standing on the slab" is not a charge of negligence at all but if it is the charge is one of general negligence only and not submissible in view of the specific allegations and the relationship.

This rather ingenious argument and the cases offered in support of it are not applicable however to the facts and circumstances of this record. Unquestionably, one may not charge specific negligence and submit his case on general negligence or upon proof of some act

wholly beyond the amendable charges of his petition. State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S. W. (2d) 21. Neither may one charge the first defendant with specific acts of negligence and recover against him upon proof of specific acts of negligence· on the part of a second defendant when the first defendant is not responsible for and owes no duty with respect to the acts so proven and submitted. Snyder v. Murray, 223 Mo. App. 671, 17 S. W.· (2d) 639. Admittedly, liability may not be predicated upon a charge of negligence too remote to be considered a contributing cause of the injuries complained of. Smith v. Mabrey, 348 Mo. 644, 154 S. W. (2d) 770. Neither may one be charged with liability if in point of fact some intervening proximate act of negligence by a third party causes the injuries complained of. General Box Co. v. Missouri [904] Utilities Co., 331 Mo. 845, 55 S. W. (2d) 442. And so it is with instructions, they must follow the allegations of the petition and the proof, hypothesize facts demonstrating a legal obligation in respect to which the defendant owes some duty (Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S. W. (2d) 707) and they must factually and legally demonstrate the defendant's breach of that duty. Hutchison v. St. Louis-S. F. Ry. Co., 335 Mo. 82, 72·S. W. (2d) 87. In no instance, save one, however, are the facts in any of these cases applicable to the facts of this case.

Admittedly, by all·the evidence, the lights on the stalled truck were on, not only at the time of the collision but from 5:30 until 12:30. They were pointed at an angle, in a southwesterly direction, down and across the highway. They so shined and were so pointed as to "shorten" Eugene's vision. Some of the plaintiff's witnesses said that the lights "were pretty bright," "slanting very brightly into our eyes" and, "they were blinding." The gist of the plaintiff's evidence was that the truck lights blinded Eugene until he drove past their rays and their own headlights reflected in the taillight of Mr. Creek's car and it was then too late to avoid crashing into the rear of that car. And so, "In view of, the evidence as to the purpose of McDaniel's (Biscuit Company's) stopping and where he stopped, and the position at the time of the Shell truck, without lights, and with his (McDaniel's) lights on, which would tend to prevent a driver coming from the south from seeing the Shell truck, as the evidence tends to show, and in view of the other conditions obtaining, there would be a jury case regardless of any duty to· so warn. It was McDaniel's duty to stop his truck at a place where his lights would not. have prevented approaching drivers from seeing the unlighted Shell truck." Brinkley v. United Biscuit Co., 349 Mo. 1227, 1242, 164 S. W. (2d) 325, 331. In Snyder v. Murray, cited by the appellants, the Greyhound Lines were not responsible for the lights but the court said: "The ·sole proximate cause of the collision, .. ·. ·. was the presence of the men in the center of the road to-

gether with the effect of the headlights in preventing him from discovering the men sooner, requiring him to suddenly apply his brakes and slide into the service car." In effect that is the situation in this case. The proof was in accordance with the allegations of the specific charge of negligence that the appellants "parked an automobile close to the highway with blinding headlights" and thereby proximately caused the collision. Weber v. Evans, (Mo. App.) 15 S. W. (2d) 370, 373.

As the appellant says, there was no proof or submission of failure to warn or to lookout but, in any event, these charges and the charge of "negligently helped to cause the Creek automobile to be standing on the slab" and the specific charge of blinding lights were separately charged acts of negligence and there being pleading and proof of the one, blinding lights, the charge and submission as to the other acts becomes immaterial upon this appeal. Meeker v. Union Electric L. & P. Co., 279 Mo. 574, 602, 216 S. W. 923; Guthrie v. City of St. Charles, 347 Mo. 1175, 1191, 152 S. W. (2d) 91. The fact that the appellants may have been negligent in some other respects (Gray v. Kurn, 345 Mo. 1027, 1043, 137 S. W. (2d) 558) or that Creek's negligence and Eugene's negligence may also have contributed to cause the collision does not exonerate the appellants if their negligence with respect to the lights concurred to cause it as the jury reasonably could and did find under the evidence and the hypothesization of the instruction. Byars v. St. Louis Public Ser. Co., 334 Mo. 278, 66 S. W. (2d) 894. "The instruction specifies all the facts which the jury were required to find in order to make the defendant liable" and from them the jury could reasonably draw the conclusion of concurring proximate cause. Harrison v. Kansas City Electric L. Co., 195 Mo. 606, 633-634, 93 S. W. 951. Eugene's negligence, if found, was not imputable, in the circumstances of this case, to the plaintiff and her instruction on that subject did not erroneously ignore the appellant's defense of sole cause. Warren v. Giudici, 330 Mo. 483, 50 S. W. (2d) 634. It is not necessary to further discuss these related [905] assignments of error in detail. It is enough to say that they are all fully considered and plainly governed by the cases cited in this and the two preceding paragraphs. There was no error in the denial of the appellant's motion for a directed verdict, or in the giving of the respondent's instructions one and five, at least in the respects complained of. Weber v. Evans, supra; Brinkley v. United Biscuit Co., supra.

The plaintiff's instruction on the measure of damages permitted an allowance for past and future physical pain and mental anguish and in a separate paragraph said: "If you find from the evidence that as a direct result of the casualty and injury to her, *her power to work and labor has been and is reasonably certain to be impaired in the future,* then you can take into consideration and

make fair and reasonable allowance for all such impairment you so find.'' There was no evidence that the plaintiff, a minor, had been emancipated and the case was not tried upon the assumption that she had been. Shouse v. Dubinsky, (Mo. App.) 38 S. W. (2d) 530; Wagner v. Gilsonite Const. Co., (Mo.) 220 S. W. 890. It is insisted, therefore, that the instruction was prejudicially erroneous because it allows a recovery by a minor of *earnings* to which she is not legally entitled. It is insisted that the instruction falls within ''any impairment to his earning power and capacity'' condemned in Evans v. Farmers Elevator Co., 347 Mo. 326, 337-341, 147 S. W. (2d) 593, 598-601. See also ''from working and earning a livelihood for himself'' in Chapman v. Missouri Pac. R. Co., (Mo. App.) 269 S. W. 688, 690-691. But in the Evans case the emphasis was upon the words ''earning power'' and the fact that the instruction looked to the future, particularly to future earnings while the plaintiff was a minor. The words ''earnings'' or ''earning power'' are not used in this instruction. The Evans case recognizes that a minor may recover for ''the present impairment of (his) capacity to work and labor'' as contrasted with an allowance for a loss of his earnings or his earning power while a minor. 347 Mo., l. c. 341, 147 S. W. (2d), l. c. 601. ''There is undoubtedly a distinction to be drawn between present impairment of the capacity to work, and loss of earnings because of physical incapacity. In a case where the former is a proper element of damage, the plaintiff may be entitled to recover, although there may in fact be no actual loss of earnings. This upon the theory that to be deprived of the present ability to work is itself a source of injury, independent of the pecuniary benefits that such labor might confer. But if the charge is one of impairment of earning capacity, not in the present, but in the future, it is to be taken as referring to the loss of pecuniary benefits in the future, . . .'' Lanasa v. Downey, (Mo. App.) 201 S. W. (2d) 179, 184. It is possible, in some circumstances, that this instruction could be construed as referring to the latter class of losses and we are not to be understood as recommending its unrestricted use. See Trusty, Construing Instructions, p. 260 and Gurwell v. Jefferson City Lines, (Mo. App.) 192 S. W. (2d) 683, 689-690. The evidence in this case as to damages all referred to Dottie Ann's physical injuries. She was a high school girl and there was no evidence whatever concerning any earnings. The instruction does say ''the power to work and labor'' thereby broadly covering ''present impairment of capacity to work.'' If the appellants thought the instruction subject to the interpretation of allowing compensation for earnings or earning capacity they could and should have offered an instruction precisely limiting and clarifying the subject. Wolfe v. Kansas City, 334 Mo. 796, 805, 68 S. W. (2d) 821. It cannot be said, in view of all the circumstances of this record and these reasons,

that the instruction was prejudicial, even if it is not as accurate and plain as it should have been, to the appellants in such manner as to materially affect the merits of the appellants' cause. Mo. R. S. A., Secs. 847.123, 847.140b; Petty v. Kansas City Public Service Co., 355 Mo. 824, 834, 198 S. W. (2d) 684, 688.

In conclusion the appellants contend that the verdict of $10,000 is excessive and the result of passion and prejudice [906] and that the court erred in refusing to discharge the jury because of misconduct in examining the plaintiff in the presence of the jury. The appellants concede that the plaintiff "did sustain burns on the lower portion on the back side of her body" and "There is no question but that the burns were serious." So, there is no contest as to the nature and seriousness of the plaintiff's injuries. As a matter of fact the appellants do not contend or argue that the plaintiff's injuries are not sufficient to support the award of $10,000. Myers v. Chicago, B. & Q. R. Co., 296 Mo. 239, 246 S. W. 257. Their contention is that the verdict was brought about by reason of the erroneous instruction on the measure of damages, the plaintiff's being brought into the courtroom on a stretcher and the misconduct of examining her in the presence of the jury. This argument and assignment of error does not, in point of fact, require a review of the excessiveness of the verdict but only a determination of whether there was such misconduct as to require a new trial regardless of the size of the verdict. Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. (2d) 304, 309.

The plaintiff was injured on January 10, 1946. When the case was tried in October 1946 she was in a hospital in Kansas City receiving treatment, including plastic surgery. The trial lasted three days and the plaintiff was not present in the courtroom or even in Nevada when the trial began. She was brought to Nevada from Kansas City in an ambulance and was in the courtroom for a very short while, just long enough to testify and for the doctor to elaborate on his previous testimony as to her injuries. She was the plaintiff and appellants' counsel in making the objections now under consideration said: "We never did object to the bringing in of plaintiff on the stretcher; what we are asking was that there be an agreement between counsel that at the time we made our objections as to the outcries of the plaintiff and at all times she was on a stretcher, so our record shows the facts as they were," consequently there can be no question as to her right as a party to be there. Bryant v. Kansas City, 286 Mo. 342, 228 S. W. 472; 6 Wigmore, Evidence, Secs. 1837-1841.

The precise incident of which the appellant complains and asserts that the court abused its discretion (Smith v. Thompson, 346 Mo. 502, 142 S. W. (2d) 70) is this: After the plaintiff testified her counsel recalled the doctor and asked him to "show the extent and

nature of the present condition." The doctor then stated that he needed some medicine to take the dressings off and her counsel said: "Without undressing them can you show what area it covers instead of taking them off? . . . I don't believe we will go through the trouble to her of taking them off, Doctor. Can't you just explain it without turning her over?" The doctor said: "Well, the burns are on the back." Counsel said: "I don't believe I would attempt to take them off." At this point the doctor, nevertheless, started to remove a bandage and the record recites: "Witness: (crying) "Oh, don't." Appellants' counsel then described the occurrence, in graphic language, and asked that the jury be discharged. The court said: "The objection is overruled because at the time the plaintiff made an outcry they immediately stopped to unwrap or further exhibit any of the wounds to the jury; for that reason it is overruled at the present time." The doctor then concluded his description and opinion of the plaintiff's injuries without further demonstration or illustration. We do not approve of the occurrence (Borrson v. M.-K.-T. R. Co., (Mo.) 161 S. W. (2d) 227, 232) but in the circumstances it did not constitute such prejudicial error as to compel a new trial. The trial court considered and passed on the effect of the occurrence at the time and again, presumably, when he ruled on the motion for a new trial and we cannot say that the incident was so obviously and unduly prejudicial that the court abused its discretion in not discharging the jury or in not granting a new trial. Petty v. Kansas City Public Ser. Co., 354 Mo. 823, 833-834, 191 S. W. (2d) 653, 658; Petty v. Kansas City Public Service Co., 355 Mo. 824, 834-835, 198 S. W. (2d) 684, 688-689; Smith v. Thompson, supra.

[907] There being no prejudicial error the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.