LEE COUNTY FARMERS ASSOCIA-TION STORE, Inc., and Farmers Co-Op of Lee County, Appellants,

v.

STEGALL & COMPANY, Inc., Appellee.

No. 15286.

United States Court of Appeals Eighth Circuit.

June 30, 1955.

Hal B. Mixon, Marianna, Ark., for appellants.

A. M. Coates, Helena, Ark. (O. C. Brewer, Helena, Ark., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

Stegall & Company, Inc., a corporate resident of the state of North Carolina, brought suit in the District Court for the Eastern District of Arkansas to recover the sum of $3,800.00 from the Lee County Farmers Association Store, Inc., a corporation organized and existing under the laws of the state of Arkansas. A supplemental and amended complaint filed thereafter also named as a party defendant the Farmers Co-Op of Lee County, the successor in interest of the Lee County Farmers Association Store, Inc. Trial was had to the court sitting without a jury and resulted in a judgment for the plaintiff. Defendants, who are appellants here, will be referred to in the singular throughout this opinion.

This controversy involves payment of the purchase price of 200 bags of lespedeza seed alleged to have been sold and delivered by plaintiff to defendant on March 5, 1954. The facts, as found by the trial court in its Findings of Fact made at the conclusion of the trial, are substantially as follows: In the early part of February, 1954, W. W. Cook, of Bono, Arkansas, placed two orders for 300 bags each of lespedeza seed with Beall & Co., a brokerage firm located in Helena, Arkansas. Beall & Co. transmitted the orders to plaintiff's home office in North Carolina and they were confirmed to the extent of 500 bags to be shipped to W. W. Cook f. o. b. Jonesboro, Arkansas, at a price of $19.00 per bag. About the middle of February, 1954, W. W. Cook called Mr. Stegall, president of plaintiff company, requesting that the seed be shipped as soon as possible and that it be shipped to defendant's place of business at Marianna, Arkansas, rather than to Jonesboro as the contract specified. W. W. Cook advised Stegall that defendant was getting the seed and would pay for it. At about this same time W. W. Cook also called Beall & Co. and repeated the information given Stegall regarding the change in delivery of and payment for the seed. On March 4, 1954, J. L. Cook, the general manager of defendant and son of W. W. Cook, called Beall & Co. inquiring as to the whereabouts of the first shipment of 300 bags of seed, stating that he had expected it to arrive that day and had customers waiting for it. Beall & Co. called plaintiff's office in North Carolina and learned that the shipment was delayed but would arrive the following day. On March 5, 1954, Beall & Co. called defendant and informed J. L. Cook that the first shipment of seed would arrive in Marianna that afternoon. In the course of this conversation J. L. Cook advised Beall & Co. in effect that defendant was taking over all of the seed included in the original contract between W. W. Cook and the plaintiff. The seed arrived at defendant's store that afternoon and 100 bags were unloaded from plaintiff's truck into defendant's warehouse. The other 200 bags of seed were unloaded from plaintiff's truck into two trucks belonging to W. W. Cook and

were subsequently transported to Bono, Arkansas. J. L. Cook was not present when the shipment arrived but had given defendant's check for $1900.00, covering 100 bags of seed, to one Brock, a 19-year-old boy whom he had left in charge of defendant's store. Brock gave the check to plaintiff's driver but advised him that he had no way of paying for the remainder of the seed. Brock finally made the following suggestion, which he wrote on the invoice covering the sale: "draw draft on W. W. Cook Merchentil Bank of Jonesboro for 200 bags". W. W. Cook also was not present at the time of delivery and had given his drivers no instructions regarding payment although he knew the original contract called for cash on delivery. Plaintiff's draft drawn on W. W. Cook in the amount of $3,-800.00 was subsequently dishonored. The final 200 of the original 500 bags of lespedeza seed contracted for were delivered to defendant on March 9, 1954, and duly paid for. This seed was later sold by defendant to W. W. Cook and defendant received payment therefor.

In addition to the above findings, the trial court also found the following facts: That Beall & Co. at all times pertinent herein was acting as agent for the plaintiff; that J. L. Cook had authority to enter into contracts for the purchase of merchandise for defendant's store; that W. W. Cook and J. L. Cook entered into a fraudulent arrangement whereby W. W. Cook was to obtain possession of 200 bags of lespedeza seed without paying therefor; that as a result of W. W. Cook's call to Stegall, "Stegall considered, as he was intended to consider, that the purchaser of the seed had been changed from W. W. Cook to the defendant"; that J. L. Cook, in advising Beall & Co. prior to the delivery of any seed that the defendant was taking over all the seed included in the original contract between W. W. Cook and plaintiff, was acting within the scope of his authority and in doing so purported to purchase all 500 bags of seed for defendant; and that J. L. Cook instructed Brock to suggest that a draft be drawn on W. W.

Cook to cover the purchase price of 200 bags of seed. The trial court also entered the following Conclusion of Law: "The actions of J. L. Cook above set forth were done by him within the course and scope of his employment as general manager of the defendant's store and are binding upon the defendant; said actions amounted to a purchase and acceptance by the defendant of the entire 500 bags of seed called for by the original contract between W. W. Cook and the plaintiff, and the defendant is liable for the purchase price of the 200 bags of seed which have not been paid for, * * *."

On this appeal defendant contends for reversal that certain specified findings of fact made by the trial court, including the finding that a fraudulent arrangement was entered into whereby W. W. Cook was to obtain 200 bags of seed without paying therefor, are not supported by the evidence and are clearly erroneous. It is also contended that the conclusion of law above quoted is erroneous. A third point made by defendant is that the judgment cannot be sustained on the theory of fraud and deceit. In our view of the case it is necessary only to determine whether there is substantial evidence in the record to sustain the trial court's finding of fact that defendant purchased the 200 bags of seed in question from plaintiff. Although the court found that J. L. Cook and W. W. Cook "entered into a fraudulent arrangement whereby W. W. Cook was to obtain possession of 200 bags of lespedeza seed without paying therefor", it is clearly established by the record that the ultimate recovery was allowed on the theory of contract. The complaint alleged that plaintiff "sold and delivered" the seed to the defendant, and the trial court's Findings of Fact, Conclusions of Law, and Statement read at the conclusion of the case, all state that defendant "purchased" the seed from plaintiff.

Defendant answered the allegations of the complaint by way of a general denial

and evidence introduced on its behalf controverted plaintiff's evidence on all vital issues. On the issue of whether defendant purchased the 200 bags of seed from plaintiff, J. L. Cook testified for defendant that he did not tell Beall & Co., in the telephone conversation of March 5, 1954, how much of the seed he was buying but merely told the brokers that delivery was to be made at defendant's store. He further testified that he had agreed to purchase only 100 bags of seed from his father, W. W. Cook, and that he never intended to buy the other 200 bags. His testimony was corroborated by his father who testified that he sold only 100 bags of seed to defendant and that he purchased, received and used the other 200 bags himself and considered that he owed plaintiff the amount of the purchase price. W. W. Cook admitted talking to Mr. Stegall and Beall & Co., and advising them to deliver the seed to defendant's store, but denied telling them that defendant would pay for it. On the other hand, plaintiff's witnesses were equally positive in testifying that defendant did agree to buy the seed. Allen Beall, Jr., and R. P. Stegall both testified that W. W. Cook called their office advising them that the seed should be delivered to defendant who would pay for it. Allen Beall, III, asserted unequivocally that in the conversation on March 5, 1954, before any of the seed had been delivered, J. L. Cook told him he had taken over all the seed and was to receive and pay for it. It was not disputed that J. L. Cook, as general manager of defendant, had authority to bind defendant on contracts of purchase. Thus the trial court, sitting as the trier of fact, was confronted with directly conflicting testimony on the issue of substitution of purchasers under the seed contract. There can be no doubt that the parties could, if they so desired, effect such a substitution of purchasers.

██ In reviewing findings of fact made by the trial court, this court is bound by the provisions of Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A., which provides, in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Credibility of the witnesses was the decisive factor in this case. If the trial court had chosen to believe the testimony of defendant's witnesses that J. L. Cook had never agreed to purchase the 200 bags of seed from plaintiff, such action would find support in the evidence. But after hearing the testimony and observing the manner and demeanor of the witnesses on the stand, it chose to give greater credence to plaintiff's witnesses and specifically discredited some portions of the testimony introduced on behalf of the defendant. W. W. Cook admitted that he had previously been convicted and served a sentence for issuing bad checks. He further admitted owing nearly $16,000.00 in unsatisfied judgments. Although the seed was originally consigned "f. o. b. Jonesboro, Arkansas", W. W. Cook testified he had it delivered to defendant's store in Marianna, over 100 miles away, and sent men and trucks there at his own expense, as a "convenience" to plaintiff. Yet he made no provision for payment for the seed, and his drivers received no instructions in regard thereto, even though he knew it was a cash on delivery sale. His explanation that he would have sent along a check if he hadn't been out of town that day was rejected by the trial court. There were also inconsistencies in J. L. Cook's testimony which fully warranted the court in refusing to accept his statements regarding the purchase at face value. The court also discredited young Brock's statement that it was his own idea to place the notation on the invoice to draw a draft on W. W. Cook for 200 bags of seed. The court was inclined to believe, in view of all the facts and circumstances surrounding the transaction, and in view of the youth and inexperience of Brock, that he was instructed by J. L. Cook to

make such a suggestion. As to plaintiff's witnesses, the court specifically credited the testimony of R. P. Stegall and the Bealls with reference to the telephone calls received from W. W. Cook and J. L. Cook changing the name of the purchaser under the seed contract.

Under the evidence presented, the issue of whether defendant became the purchaser of the 200 bags of lespedeza seed was one of fact to be tried and determined by the trial court and its determination is binding on this court. Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 143 F.2d 895. The argument is made that, since the seed had already been shipped from North Carolina at the time J. L. Cook called Beall & Co., stating that he was to receive the seed and pay for it, and since the seed remained billed to W. W. Cook, a substitution of purchasers was not shown. But R. P. Stegall explained that he changed the name of the purchaser of the seed on his own office records and the evidence was undisputed that the conversation between J. L. Cook and Beall & Co. occurred prior to the delivery of any seed. We conclude that the trial court's finding and conclusion that defendant became the purchaser of the 200 bags of seed in question is supported by the evidence and cannot be said to be clearly erroneous.

Our affirmance of the trial court's finding and conclusion on the foregoing issue compels an affirmance of the judgment appealed from and renders unnecessary an examination of the court's finding relative to the question of fraud. We do not think the findings are in any manner inconsistent and it appears from a study of the entire record that the finding that a fraudulent arrangement existed between J. L. Cook and W. W. Cook, whereby the latter was to obtain 200 bags of seed without paying therefor, was intended by the trial court to reflect on the credibility of these two witnesses for the defendant rather than serve as a basis for the imposition of liability.

The judgment is affirmed.