**NORTH AMERICAN VAN LINES, Inc.,**
**Appellant,**

v.

**Patricia S. BROWN and Gerald Brown,**
**Appellees.**

**No. 15813.**

United States Court of Appeals
Eighth Circuit.

Nov. 7, 1957.

Don M. Jackson, Kansas City, Mo. (Rogers, Field, Gentry & Jackson, Kansas City, Mo., were on the brief), for appellant.

Don G. Stubbs, Kansas City, Mo. (Tom J. Stubbs and Stubbs, McKenzie, Williams & Merrick, Kansas City, Mo., were on the brief), for appellees.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Gerald Brown and Patricia S. Brown brought this action against North American Van Lines, Inc., and Herbert F. Butterfield for personal injuries sustained by Patricia S. Brown and for loss of service sustained by her husband, Gerald Brown, as the result of an automobile accident which occurred on March 3, 1955, on United States Highway No. 40, near the LaFayette County line in Jackson County, Missouri. Prior to the trial of the cause, a separate settlement was made with Butterfield and the case proceeded to trial against North American Van Lines, Inc., only. Federal jurisdiction was established by reason of diversity of citizenship.

The action was tried to the court, without a jury, and the court entered findings of fact and conclusions of law in favor of the plaintiffs and awarded judgment for Patricia S. Brown in the amount of $25,000.00 and Gerald Brown in the amount of $5,000.00. Defendant was given $5,000.00 credit on each of the

judgments, a total of $10,000.00, the amount received by plaintiffs in compromise of their cause of action against the former co-defendant, Butterfield.

The findings of fact, conclusions of law and judgment were as follows:

### "Findings of Fact."

"(1) On March 3, 1955, plaintiffs were husband and wife and on the date of the commencement of this action were citizens and residents of the State of Maryland. Defendant was and is a citizen and resident of the State of Indiana. The amount in controversy in this action exceeds the sum of $3,000.00, exclusive of interest and costs.

"(2) On said 3rd day of March, 1955, defendant North American Van Lines, Inc., was operating its van type tractor and trailer truck in an easterly direction on U. S. Highway No. 40 in Jackson County, Missouri, by and through its duly authorized agent and servant. Said highway extended generally in an easterly and westerly direction.

"(3) When said tractor-trailer truck reached a point on said highway approximately four-tenths of one mile west of the LaFayette County line in Jackson County, Missouri, at about 3:30 o'clock P.M. of said date, it was brought to a stop with four and one-half feet of said trailer upon the traveled portion of said highway and immediately east of the crest of a hill and on a curve of said highway to the south and on a downgrade to the east; that such downgrade continued to the east for at least one-half mile.

"(4) The fan belt of said tractor had broken approximately one-fourth mile west of the place said tractor-trailer truck was so stopped.

"(5) After stopping said tractor-trailer as aforesaid, defendant's said agent and servant placed one reflector ninety (90) feet to the west of the rear of said trailer and near the center line of said highway;

a second reflector thirty (30) feet to the rear of said trailer and near the center line of said highway; and a third reflector even with the rear of said trailer and near the center line of said highway. This occurred during the daylight hours and at a time when lights were not required.

"(6) The paved portion of Highway No. 40 was twenty-four feet wide and the shoulders bordering said highway were approximately twelve feet in width, a portion of said shoulders being surfaced with gravel. Defendant's said tractor-trailer truck was seven to eight feet in width. Immediately following the casualty hereinafter referred to, two other large trucks drove onto the shoulder on the south side of said Highway No. 40, and completely off of the traveled portion of said highway, both to the east and west of the place on said highway where defendant's tractor-trailer was stopped.

"(7) At said time and place, one Herbert Butterfield, formerly a co-defendant in this action, was operating a motor vehicle in an easterly direction on said Highway No. 40 and approached said stopped tractor-trailer truck from the rear, at the crest of a hill and on a curve. By reason of the position of said trailer on the traveled portion of said highway and by reason of the position of said reflectors near the center line of said highway, said Butterfield drove his said motor vehicle into the north one-half of said highway to pass said trailer and reflectors, to avoid colliding with same.

"(8) At said time and place, plaintiff Patricia S. Brown was operating a motor vehicle, owned by plaintiff Gerald Brown, in a westerly direction on said Highway No. 40, on a curve and immediately approaching the crest of said hill where said tractor-trailer truck was parked; said plaintiff was then driving upon the north one-half of said

highway at a speed of approximately forty to forty-five miles per hour. The automobile driven by Patricia S. Brown and the Butterfield automobile reached a position opposite defendant's truck at about the same time. Butterfield's automobile was then traveling astride the center line of Highway No. 40 and occupying a portion of the north one-half of said highway. Plaintiff Patricia S. Brown under such circumstances was confronted with a sudden emergency, not of her own making, and under the stimulus of such emergency and in order to avoid a collision with the Butterfield automobile Patricia S. Brown drove the automobile so operated by her partially onto the shoulder bordering the north side of said highway where the same went out of control and upset and said Patricia S. Brown was thrown therefrom and was injured.

"(9) Plaintiff Patricia S. Brown, when imminently confronted with the situation of emergency above found, acted and responded thereto as a very careful and prudent person in the exercise of the highest degree of care for her own safety would have reacted under the same or similar circumstances.

"(10) As a direct result of said upset, plaintiff Patricia S. Brown sustained fractures of the bodies of the first and second cervical vertebrae, fractures of the neural arch of the first and second cervical vertebrae, and fractures of the bodies of the third, fourth and fifth dorsal vertebrae and injury to the first cranial nerve. She was confined to a hospital for ten (10) days and thereafter was obliged to wear a Minerva type cast extending from over her head to below her hips for approximately four (4) months. Thereafter she was obliged to wear a neck and back brace for an additional period of time. She was under the care and treatment of ortho-pedic specialists until October, 1955. She has been and now is obliged to take medicine for the relief of pain. Her injuries have resulted in a progressive hump in her back between her shoulders. She has had episodic headaches and pain in her cervical region and in her dorsal area ever since such injuries were sustained, except when under the influence of narcotics. In the future she will be required to undergo a surgical stabilization of her dorsal spine, which, if successful, will reduce her disability in that area of her back to about twenty-five percent and this will be permanent. She is a graduate registered nurse and earned in excess of $4,000.00 in the year immediately preceding the injury. She was unable to resume that work for a period of one year because of her injuries and will be twenty-five per cent incapacitated from pursuing such occupation in the future. She has a narrowing of the disk space between the first and second cervical vertebrae, with hypertropic spurring in that region of the neck. This is a progressive condition and is a result of her injuries so received.

"(11) Plaintiffs compromised their causes of action against the former defendant Butterfield only, in consideration of the receipt of $10,000.00, reserving, however, their causes of action against all other persons, firms and corporations, including defendant North American Van Lines, Inc.

"(12) The automobile of plaintiff Gerald Brown was totally destroyed as a result of the accident hereinabove described. Its reasonable value immediately before the accident was $500.00 and its reasonable salvage value thereafter was $25.00. Personal property of this plaintiff, consisting of clothing and household goods which were in this plaintiff's automobile at the time of such accident, was totally destroyed.

The reasonable value of such property immediately before such accident was $1,000.00. This plaintiff incurred necessary expense for medical and hospital care and attention for his wife, all as a result of this accident as follows: Hospital, $187.00; Dr. Robert H. Fitzgerald, $750.00; Dr. J. E. McConchie, $119.00; back brace, $91.80; ambulance, $15.00. The cost of the surgical stabilization operation which will be reasonably necessary as a result of this accident will be as follows: Hospital, $500.00; surgeon's fee, $350.00; the total of such special damages being $3,488.-30.

"(13) Plaintiff Gerald Brown has sustained the loss of the services, society and consortium of his said wife since said accident and to the date of this trial and will suffer at least partial loss of same in the future."

"Conclusions of Law"

"(1) Defendant North American Van Lines, Inc., failed to exercise the highest degree of care in the operation of the tractor-trailer truck mentioned in evidence and was, therefore, guilty of negligence in the following particulars:

"By failing to park said tractor-trailer truck with its right side as near the right hand side of the highway as practicable, in violation of Section 304.015, Missouri Revised Statutes, 1949 [V.A.M.S.].

"(2) The negligence of the defendant was a contributing proximate cause of the casualty and upset of the vehicle being operated by plaintiff Patricia S. Brown and that plaintiff's injuries and of both plaintiffs' damages. Plaintiff Patricia S. Brown was in the exercise of the highest degree of care for her own safety at all times mentioned in evidence.

"(3) Judgment should be rendered against the defendant and in favor of the plaintiff in Count I of the complaint in the amount of Twenty Five Thousand Dollars ($25,000.00), and against the defendant and in favor of the plaintiff on Count II of the complaint in the amount of Five Thousand Dollars ($5,000.00), together with the costs of this action.

"(4) Defendant is entitled to credit of Five Thousand Dollars ($5,000.00) on each of such judgments, or a total credit of Ten Thousand Dollars ($10,000.00), being the partial compensation plaintiffs have heretofore received in compromise of their causes of action against the former co-defendant, Herbert Butterfield.

"(5) The Court has jurisdiction of this cause under Section 1332(a)(1), Title 28 U.S.C.A.

"Let judgment be entered accordingly."

The defendant appeals and contends (Point I, A and B) that the court erred in finding and concluding that defendant's agent was negligent in stopping its truck on the highway as he did and (Point II) that such negligence was a proximate, concurring cause of plaintiff's injuries, and (Point III) in failing to find that plaintiff was guilty of contributory negligence.

### Point I, A and B.

The record shows that on March 5, 1955, defendant's truck was proceeding east on U. S. Highway No. 40, in Jackson County, Missouri, at about 40 to 45 miles per hour, when the fan belt on the truck's motor broke. The driver testified that the motor began to overheat and to avoid damage to the engine, he turned it off. When the motor was off, the driver knew the compressor for air used in the truck and trailer brakes was also stopped and if the air pressure in the tank dropped below thirty pounds, the wheels on the trailer would automatically lock. There was no showing as to what amount of air was in the tank when the motor was turned off, what amount of air is required to stop a truck and

trailer of this type, or whether the motor could have been started again, after it had cooled, and the air pressure again built up, or how long the motor would have continued to operate without the fan belt, with or without damage to the motor.

Defendant's driver testified that after the fan belt broke, he traveled about one-half a mile looking for a place where he could obtain a new fan belt. " * * I had pumped the brakes three or four times, and it had just used up all the air." Upon reaching the "crest of a small hill", he could see on to the east for about a mile, and seeing no filling station, he began to look for a place to park. The driver stated, "I did not coast on down over the hill to the east * * * ", although there was evidence that a short distance farther down the road there was a wide shoulder where large trucks customarily stopped and parked off the highway, and which could have been clearly seen from the point where the driver did park his tractor-trailer unit. The shoulder of the highway, at the point where defendant's driver did in fact park, was twelve feet wide and defendant's truck was seven to eight feet wide. The driver said he did not pull his truck and trailer all the way onto the shoulder because "the front wheels began to pull to the right and started to sink", although the driver testified that he did not "go around and look to see if it was muddy or anything like that." The truck and trailer were parked with a measured four and one-half feet of the trailer extending out into the paved portion of the highway and the left rear dual wheels of the tractor about two feet on the pavement. There was no testimony as to any reason why it was "not safe" for the driver to pull the truck entirely onto the shoulder even though it was muddy.

After parking the tractor-trailer, defendant's driver placed metal reflectors, the height of which were estimated between eight inches and one foot, near the center line of the highway and to the rear of the parked truck, at distances of 90 feet, 30 feet and one even with the rear of the trailer. He then obtained a ride into Oak Grove, Missouri, to obtain a new fan belt.

Shortly thereafter, an automobile driven by Herbert F. Butterfield approached the parked truck from the west, traveling at an admitted speed of sixty-five to seventy miles per hour, and Butterfield testified that he first noticed defendant's truck when he was six to seven hundred feet behind it and when the truck was just over the crest of the hill and on the curve. He could not tell whether the truck was moving or not, and did not determine that it was parked, partially in his lane of traffic, until he was three hundred to three hundred and fifty feet from the rear of the truck trailer. Upon seeing the reflectors behind the truck and near the center line of the highway, Butterfield accelerated, pulled out of his lane of traffic and partially into the west bound lane of traffic in order to pass the parked truck and avoid hitting the reflectors.

The plaintiff, Patricia S. Brown, testified that as she was traveling west up the hill where this accident happened, she observed another vehicle [Butterfield's automobile], one hundred and fifty to two hundred feet ahead of her and traveling between sixty and seventy miles per hour, pull into her lane of traffic and head directly toward her automobile. She also saw a vehicle occupying the left hand lane, although she did not know whether it was moving or standing still. In an effort to avoid collision with the oncoming car in her lane of traffic, she pulled her car to the right and partially onto the shoulder, her automobile went out of control, rolled over into the ditch on that side of the highway, she was thrown from her automobile and sustained serious and permanent injuries, the nature and extent of which are not contested here.

Edward Butler, a Missouri State Highway patrolman testified that he arrived at the scene of this accident at 4:30 P.M.; that the defendant's truck was parked on the south side of the road par-

tially on the shoulder and partially on the paved portion of the highway and "the truck was almost on the crest of the hill, probably just a little over"; that there were possibly four turn-off (access roads) on the south side and three on the north side of Highway No. 40 between Oak Junction and the place where the truck stopped and parked and at least two of them are plainly visible from the highway and are used by the traveling public to go from one highway to another. The patrolman stated that there was room enough for two normal automobiles to pass between the rear of defendant's parked truck and the north edge of the pavement, but "you would have to be a pretty good driver, driving at highway speed, to do so * * *." "The shoulder at the point of this accident had just about four feet of gravel * * * beyond that the shoulder was dirt and sod * * * the dirt was wet and muddy * * * it was a thaw * * * it was a surface slickness, even though down under the surface it may not have thawed yet * * * I asked him [the driver] why he had not gone on down the hill to a place near the bridge that is used as a turn-off by big outfits * * * He did not believe he could make it * * * He did not tell me why he could not make it or that anything was wrong with the truck * * * He did not state that the truck brakes were not operating."

Harry E. Gladish, a magistrate of La-Fayette County, Missouri, testified that as he was leaving the scene of the accident, he saw two other trucks parked on the shoulder in question and completely off the highway. "The truck immediately east of the one that was stalled looked at a glance, it appeared to me, to be a transport type, tractor type, the other truck I thought to be smaller."

Roy Warren, operator of the tow-truck used to pull the plaintiff's wrecked auto from the ditch after the accident, testified that he drove his tow-truck onto the shoulder in question, had no difficulty driving on the shoulder and "did not mire down * * * the shoulder was slick on top * * * it was clay and

will stick to anything * * * It wasn't sloppy muddy * * * I saw a Pilot Grove feed truck approximately one hundred and fifty feet east of this parked truck [Defendant's] * * * It was on the south shoulder * * * Between Oak Junction and the place where the tractor-trailer was stopped, partially on the highway * * * there are three cross-overs where one may turn off Highway No. 40 * * * I have had occasion to see tractor-trailer units turn off these turn-offs." Further evidence was offered by plaintiff and defendant as to the condition of the highway shoulder, the position and proper placing of reflectors by defendant's driver and the distance between the rear of the truck and the north edge of the highway.

Appellant argues that the breaking of the fan belt on the truck, some one-half mile from the scene of the accident, combined with the muddy condition of the shoulder at the scene of the accident, created an emergency situation which absolutely required the appellant's driver to park its truck and trailer in the position on the highway that he did. The trial court found that there was no present emergency or necessity that required defendant's driver to park where he did and our review and consideration of the evidence does not show the trial court's finding was clearly erroneous.

Appellant argues further that substantial evidence refutes the trial court's finding of fact that the defendant's truck was east of the crest of a hill and on a curve, when, as their driver testified, the truck "was on a grade * * * a slight slope * * * There was a slight curve where the truck was parked * * * a very slight curve, to the right, facing east * * *" and four witnesses testified on the trial that the truck was "parked east of the crest of the hill and on a curve to the right." From our examination of the photographs introduced by both parties and the engineer's profiles of the area in question, together with testimony of the various witnesses, we hold that there

was sufficient evidence to support the trial court's finding here.

The trial court found in its conclusions of law that the defendant was negligent "by failing to park said tractor-trailer with its right side as near the right hand side of the highway as practicable, in violation of Section 304.015 Missouri Revised Statutes, 1949 [V.A. M.S.]." Section 304.015 of the Missouri Revised Statutes, so far as applicable here, provides:

"All vehicles not in motion shall be placed with their right side as near the right-hand side of the highway as practicable * * *."

The courts in the State of Missouri, in interpreting this statute, have held it to be negligence "per se" to park a vehicle in the traveled portion of the highway where there is room to park the same on the shoulder, unless it affirmatively appears that it is necessary for a defendant to park on the traveled portion. Cram v. Eveloff, 8 Cir., 127 F.2d 486, 488; Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299; Scott v. Kansas City Public Service Co., Mo.App., 115 S.W.2d 518, and our review of the record presented here does not reveal that defendant has shown legal justification or excuse for his violation of the statute, by adducing proof that the occurrence, wholly without his fault, made compliance with the statute impossible or that proper care on his part would not have avoided this accident. Leek v. Dillard, Mo.App., June, 1957, 304 S.W.2d 60, 64; Wilson v. Shumate, Mo., 296 S.W.2d 72, 75.

This Court has held that findings of the trial court cannot be said to be clearly erroneous where the evidence on a particular point may conflict, Safety Motors, Inc., v. Elk Horn Bank & Trust Co., 8 Cir., 217 F.2d 517, 522; Joseph E. Seagram & Sons v. Bynum, 8 Cir., 191 F.2d 5, 15; Lee County Farmers Ass'n v. Stegall & Co., 8 Cir., 224 F.2d 219, 222, and so far as the facts, which are determinative of the issue of negligence involved herein, are concerned, there was little conflict, and the record here reflects that the opportunity the court had to observe the witnesses was availed of and the evidence carefully studied. The court made the determination of negligence on the part of the defendant in parking its truck upon the highway in the position and place that it did upon substantial and persuasive evidence and the finding was not clearly erroneous.

### Point II.

Appellant next contends that "the trial court committed prejudicial error in finding that the defendant was negligent, and that such negligence was a proximate, concurring cause of plaintiff's injuries, for the reason that such conclusion is contrary to the weight of the evidence and was induced by an erroneous view of the law."

Proximate causation here was a question of fact to be determined by the trier of facts and the Missouri decisions do not indicate that the court's finding here complained of was induced by an erroneous view of the law.

The Supreme Court of Missouri set forth the test for proximate cause in Floyd v. St. Louis Public Service Co., 280 S.W.2d 74, 78, as follows:

"Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrence the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if the negligence, combined with the negligence of others, results in injury to another."

Cf. Snyder v. Jensen, Mo., 281 S.W.2d 802; Cox v. Wrinkle, Mo., 267 S.W.2d 648; Champieux v. Miller, Mo., 255 S.W.2d 794, 797; Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831; Browne v. Creek, 357 Mo. 576, 209 S.W. 2d 900, 904, and the Missouri Supreme Court, en banc, in Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 811, held that "the usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained."

■ Appellant emphasizes that there actually was sufficient room between the rear of the parked truck and the center line of the highway for Butterfield to pass safely by slowing down, driving over the reflectors and negotiating his six-foot wide automobile through the approximate seven and one-half feet remaining between the rear of the trailer and the center line of the highway. They contend that in not doing so, Butterfield was patently negligent, but want of causal connection between defendant's negligence and plaintiff's injuries was not conclusively established and defendant's driver, when he parked in the position and place that he did, should reasonably have considered the probability of injury, not only from careful drivers of other vehicles, but from negligent ones. Leek v. Dillard, supra, Mo.App., 304 S.W.2d at page 66, and cases cited therein. We do not consider the act of Butterfield so extraordinary in this situation as not to be reasonably foreseeable.

■ The trial court found that the negligence of the former defendant, Butterfield, was concurring negligence, operating together with the negligence of defendant in causing plaintiff's injuries. We think, too, that while Butterfield was negligent, his negligence was not such a new and independent intervening cause as would relieve the defendant of liability. The unnecessary presence of the parked truck in a portion of the eastbound lane furnished a substantial evidentiary basis for a finding by the District Court of a causal connection between the defendant's negligent blocking of a part of the way and the infliction of plaintiff's injuries. Defendant's conduct reasonably could be found to be a factor in causing the accident, and it follows that defendant cannot be absolved from responsibility merely because the concurring negligence of Butterfield contributed to the plaintiff's loss.

### Point III.

■ The final contention of defendant is that the trial court committed prejudicial error in failing to find plaintiff, Patricia S. Brown, guilty of contributory negligence. We think the contention is without merit.

The record shows that on the date of this accident, Patricia S. Brown was proceeding along Highway No. 40, at about 45 to 50 miles per hour and as she approached the hill in question, "it was a long slow hill, a gradual hill", she was suddenly confronted with a highway almost completely blocked by defendant's truck, parked partially on the south shoulder and partially on the highway, and Butterfield's car, which had pulled over the center line and into the west bound lane of traffic and was heading directly towards her at between sixty and seventy miles per hour. Patricia S. Brown testified that "when I realized that the oncoming car was in my lane and was not going to be out of my way, I turned the car onto the right hand shoulder * * * the car went off on the shoulder, and I managed to get back on the pavement, but I was out of control of it at the time * * * the car was beginning to turn over * * *." It was the opinion of the eye witness, Gladish, that the two automobiles passed each other and the defendant's parked truck simultaneously.

We cannot agree with defendant who contends "that she [Patricia S. Brown] could have seen all the existing conditions and could have observed Butterfield's automobile long before reaching the point where an emergency existed", when, as defendant admits, their large

914

van-type truck was parked on the paving with 4 and ½ feet of the trailer extending into the east bound lane of traffic, and as Butterfield testified, "When I first saw the truck it was beyond the crest [of the hill] * * * I was two hundred and fifty feet west of the truck when I saw this car [plaintiff's] two hundred and fifty to three hundred yards east of me * * * I was moving at a speed of between fifty-five and sixty miles [per hour] * * * When I saw that other car I made no effort to cut back to my right * * * that car [plaintiff's] was in its own lane completely * * * after I pulled into the north lane, I accelerated * * * perhaps to fifty seven or sixty miles per hour * * * I don't think I was completely back in my own lane until I was some fifty to one-hundred feet past [defendant's] the truck."

The question of contributory negligence here was a question of fact to be decided by the trier of facts, Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10, 15, and there was substantial evidence to sustain the trial court's finding that there was nothing in the actions of plaintiff to indicate that she did not react, as any ordinary, reasonable and prudent person would react, when confronted with an emergency and situation, not of her own causing, but created by the negligence of the defendant and the former defendant, Butterfield. There was no proof that the plaintiff's actions here were not in accord with the Missouri Revised Statutes, 1949, V.A.M.S., Section 304.010, which provides that:

. "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care * *."

In Mayne v. May Stern Furniture Company, Mo.App., 21 S.W.2d 211, 213, the St. Louis Court of Appeals, in considering a contention that plaintiff was guilty of contributory negligence, among other things, said: "The law of negligence has always recognized that, where one is confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, he will not be held to the same accuracy of judgment as would be required of him if he had time for deliberation." The Supreme Court of Missouri, in Frankel v. Hudson, 271 Mo. 495, 196 S.W. 1121, 1123, held: "One in peril through the negligence of another is not, as a matter of law, guilty of contributory negligence if, in attempting to escape, he errs in judgment and moves in the wrong direction." Cf. Golden v. Onerem, Mo.App., 123 S.W.2d 617; Proctor v. Jacob Ruppert, 236 Mo. App. 684, 159 S.W.2d 328.

The parties here waived a jury and submitted the issues to the court and the court found the controverted issues of fact involved in favor of plaintiffs. Its findings are presumptively correct and they may not be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Meier and Pohlmann Furniture Company v. Gibbons, 8 Cir., 233 F.2d 296, 300, and cases cited therein. We take that view of the evidence which is most favorable to the prevailing party and this Court will not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. Pendergrass v. New York Life Insurance Co., 8 Cir., 181 F.2d 136, 137; Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504, 506; Linscomb v. Goodyear Tire & Rubber Company, 8 Cir., 199 F.2d 431, 435; United States v. Beatty, 8 Cir., 192 F.2d 945.

We find that the judgment is sustained by substantial evidence, is not clearly erroneous, was not induced by an erroneous view of the law, and should be and is, accordingly, affirmed.